(161 App. Div. 242)

### REILLY v. STEINHART.

(Supreme Court, Appellate Division, First Department.   March 6, 1914.)

1. VENDOR AND PURCHASER (§ 18*)—OPTIONS—COVENANT TO PAY MONEY.

A covenant to pay money as consideration for an option is a contract subject to the general rules pertaining to such engagements, whether it be regarded as a binding agreement to keep an offer open, which on acceptance ripens into a bilateral contract, or a complete unilateral contract in which the obligation of the giver is subject to the condition precedent of tender of payment by the holder, in which case the latter does not become bound by mere notice of acceptance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 23; Dec. Dig. § 18.*]

2. WORDS AND PHRASES—CIVIL LAW—"PROTOCOLIZING."

The term "protocolizing" colloquially defines a proceeding under the civil law by which a contract already formulated in the words of the parties, or as drafted by a notary, is by him entered in his notarial register in the presence of witnesses; the Spanish word "protocolo," when applied to a single paper, meaning the first draft of an instrument duly executed before a notary, it being the source from which must be taken copies to be delivered to the interested parties as their evidence of right, and also the bound book in which the notary places and keeps in their order instruments executed before him, from which copies are taken for use of the interested parties.

---

3. EVIDENCE (§ 517*) — FOREIGN LAW — QUESTION OF FACT — CONSTRUCTION — EXPERTS.

    While the law of a foreign country is a question of fact, where it involves the construction of a written statute, it may also be a question of law, but even in that case it is proper to receive the testimony of those skilled in the foreign law for the purpose of construing and ascertaining the same.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2327; Dec. Dig. § 517.*]

4. FRAUDS, STATUTE OF (§ 120*)—PAROL OPTION—FOREIGN LAW.

    Cuban Civ. Code, art. 1216, provides that public instruments are those authenticated by a notary or by a competent public official, with the formalities required by law. Article 1218 declares that public instruments are evidence against the parties, their representatives, and third persons, and article 1280 provides that acts and contracts, the object of which is the creation, transmission, modification, or extinction of property rights in real property, and also all contracts in which the amount of the consideration exceeds 1,500 pesetas, must appear in a public instrument even though private. *Held*, that a parol option by which plaintiff agreed to convey to defendant all rights, concession, and lands purchased and owned by him, together with all the property pertaining to a railroad and power company in Cuba, for $1,500,000 United States currency, was unenforceable for want of protocolization in a public instrument, as required by the Cuban Code.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 268; Dec. Dig. § 120.*]

Appeal from Trial Term, New York County.

Action by Hugh J. Reilly against Frank Steinhart. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial and granting an extra allowance, defendant appeals. Reversed and dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and HOTCHKISS, JJ.

Morgan J. O'Brien, of New York City, for appellant.
William C. Rosenberg, of New York City, for respondent.

HOTCHKISS, J. The complaint alleged two causes of action, one for a balance of $35,000, remaining due on an oral option, apparently assumed to have been made in this country, and the other for the recovery of a like amount on a similar option in writing, the particulars of which are hereinafter stated. The defenses were: That the contract was made and was to be performed in Cuba, and was void under the laws of that country; that it was induced by deceit; and failure of consideration. The defendant also counterclaimed for $15,000, the down payment under the option. The learned trial justice ruled that the oral option was void under the statute of frauds, which ruling was clearly right; that the written option was a Cuban contract, and as such was valid, because under the laws of Cuba the only deficiency attributable to it pertained, not to its substance, but to the remedy for its enforcement. The court left to the jury the questions of fraud and failure of consideration. Whether or not it erred in so doing, I deem it unnecessary to determine, for I am of the opinion that the ruling with respect to the legal sufficiency of the option contract was wrong. The

material facts are as follows: Both plaintiff and defendant were citizens of the United States, domiciled and doing business in Havana; the plaintiff being a contractor and promoter of corporate enterprises, and the defendant attached to the United States Consular Service. The option contract is dated and was executed and delivered at Havana, and related to property wholly within Cuban territory. It recites that plaintiff is "the full owner of a concession * * * to build and construct a railway * * * known as the Cienfuegos, Palmira & Cruces Electric Railway & Power Company"; that there "have been issued, and are now deposited with" a firm of bankers in Havana, "bonds of the said railway and power company amounting to $2,000,000 United States currency and 19,470 shares" of the stock of that company of the par value of $100 each; that on or about April 22, 1906, plaintiff had verbally given to defendant an option "to purchase all rights, the concession, lands purchased and owned by me, and in fact any and everything pertaining to the said railway and power company"; that in consideration of a down payment of $15,000 and of a further payment on April 22, 1907, of $35,000, "I (plaintiff) hereby confirm the said verbal option in writing, said option to continue until the said 22d day of April, 1907, up to which date" defendant was given the privilege to purchase from plaintiff "all those matters heretofore mentioned, namely, the concession, lands, rights, bonds, stock, etc., meaning and indicating anything and everything pertaining to the said railway and power company, for the sum of $1,500,000 United States currency," such purchase being subject, however, to certain outstanding contracts for engineering work and for supplying power.

[1] It little matters whether we consider an option as a binding agreement to keep an offer open (Perry v. Paschal, 103 Ga. 134, 29 S. E. 703; Linn v. McLean, 80 Ala. 360; Maughlin v. Perry, 35 Md. 352), which, upon acceptance, ripens into a bilateral contract, or whether we regard it as a complete unilateral contract in which the obligation of the giver of the option is subject to the condition precedent of tender of payment by the holder, regarded in which latter light the holder does not himself become bound by mere notice of acceptance (per Prof. Langdell, 18 Harv. Law Rev. 11, 12), for, on either theory, a covenant to pay money as consideration for an option is a contract, and as such is subject to the general rules pertaining to such engagements.

In Union Nat. Bank v. Chapman, 169 N. Y. 538, 543, 62 N. E. 672, 673 (57 L. R. A. 513, 88 Am. St. Rep. 614), the court extracted from the authorities what it said were "some general principles, which appear to be settled beyond controversy," to wit:

"(1) All matters bearing upon the execution, the interpretation, and the validity of contracts, including the capacity of the parties to contract, are determined by the law of the place where the contract is made. (2) All matters connected with its performance * * * are regulated by the law of the place where the contract, by its terms, is to be performed. (3) All matters respecting the remedy to be pursued * * * depend upon the law of the place where the action is brought."

See, also, Liverpool, etc., Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788.

In support of the foregoing, the court cited Scudder v. Union National Bank, 91 U. S. 406, 23 L. Ed. 245. In Pritchard v. Norton, 106 U. S. 124, at page 130, 1 Sup. Ct. 102, at page 106 (27 L. Ed. 104), Mr. Justice Matthews examines at great length and with convincing analysis the subject of what law should determine the validity, interpretation, and enforcement of contracts, and also as affecting the sufficiency of the contract, the question of what are and what are not matters of substance. In the course of his opinion he said:

"The rule deduced by Mr. Wharton, in his Conflict of Laws, as best harmonizing the authorities and effecting the most judicious result, and which was cited approvingly by Mr. Justice Hunt in Scudder v. Union National Bank, 91 U. S. 406 [23 L. Ed. 245], is that: 'Obligations in respect to the mode of their solemnization are subject to the rule locus regit actum; in respect to their interpretation, to the lex loci contractus; in respect to the mode of their performance, to the law of the place of their performance. But the lex fori determines when and how such laws, when foreign, are to be adopted, and, in all cases not specified above, supplies the applicatory law.' This, it will be observed, extends the operation of the lex fori beyond the process and remedy, so as to embrace the whole of that residuum which cannot be referred to other laws."

Proceeding further, Mr. Justice Matthews said:

"It is to be noted, however, as an important circumstance, that the same claim may sometimes be a mere matter of process, and so determinable by the law of the forum, and sometimes a matter of substance going to the merits, and therefore determinable by the law of the contract."

Continuing, the learned justice pointed out that, although under the common law the statute of limitation is governed by the law of the forum, under the civil law a different rule prevails. Proceeding he said (106 U. S. 131, 1 Sup. Ct. 107, 27 L. Ed. 104):

"But notwithstanding the contrary doctrine of the courts of England and this country, when the statute of limitations of a particular country not only bars the right of action, but extinguishes the claim or title itself, ipso facto, and declares it a nullity, after the lapse of the prescribed period, and the parties have been resident within the jurisdiction during the whole of that period, so that it has actually and fully operated upon the case, it must be held, as it was considered by Mr. Justice Story, to be an extinguishment of the debt, wherever an attempt might be made to enforce it. Conflict of Laws, § 582. * * * The principle that what is apparently mere matter of remedy in some circumstances, in others, where it touches the substance of the controversy, becomes matter of right, is familiar in our constitutional jurisprudence in the application of that provision of the Constitution which prohibits the passing by a state of any law impairing the obligation of contracts. For it has been uniformly held that 'any law which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution.' [Citing cases.] * * * A vested right to an existing defense is equally protected, saving only those which are based on informalities not affecting substantial rights, which do not touch the substance of the contract and are not based on equity and justice. Cooley, Const. Lim. 362–369. The general rule, as stated by Story, is that a defense or discharge, good by the law of the place where the contract is made or is to be performed, is to be held of equal validity in every other place where the question may come to be litigated. Conflict of Laws, § 331. Thus infancy, if a valid defense by the lex loci contractus, will be a valid defense everywhere. * * * A tender and refusal, good by the same law, either as a full discharge or as a present fulfillment of the contract, will be respected everywhere. * * * Payment in paper money bills, or in other things, if good by the same law,

will be deemed a sufficient payment everywhere. * * . * And on the other hand, where a payment by negotiable bills or notes is, by the lex loci, held to be conditional payment only, it will be so held even in states where such payment under the domestic law would be held absolute. So if, by the law of the place of a contract, equitable defenses are allowed in favor of the maker of a negotiable note, any subsequent indorsement will not change his rights in regard to the holder. The latter must take it cum onere."

It remains, in the light of the foregoing principles, for us to discover what the record discloses with respect to the Cuban law as affecting the contract in question.

The system prevailing in civil law jurisdictions, by which certain classes of contracts are formulated, is familiar; the parties appear before a notary public, to whom declaration is made of the contract proposed to be entered into, which contract, as already formulated in the words of the parties themselves or as then drafted by the notary, is by him entered in his notarial register in the presence of witnesses. The instrument thus recorded by the notary becomes the original; copies being furnished to the interested parties.

[2] Colloquially the proceeding is known as "protocolizing" a contract or agreement.

"The Spanish word 'protocolo,' when applied to a single paper, means the first draft of an instrument duly executed before a notary, the matrix, because it is the source from which must be taken copies to be delivered to interested parties as their evidence of right; and it also means a bound book in which the notary places and keeps in their order instruments executed before him, from which copies are taken for use of parties interested." Per Stayton, C. J., Downing v. Diaz, 80 Tex. 436, 451, 16 S. W. 49, 53.

Among other articles of the Cuban Civil Code given in evidence on the trial were the following:

"Art. 1216. Public instruments are those authenticated by a notary or by a competent public official, with the formalities required by law.

"Art. 1218. Public instruments are evidence, even against a third person, of the fact which gave rise to their execution and of the date of the latter. They shall also be evidence against the contracting parties and their legal representatives with regard to the declarations the former may have made therein.

"Art. 1280. The following must appear in a public instrument: (1) Acts and contracts the object of which is the creation, transmission, modification, or extinction of property rights on (sic) real property. * * * (6) The assignment of actions or rights arising from an act contained in a public instrument. All other contracts, in which the amount of the prestations (consideration) of one of the two contracting parties exceeds 1,500 pesetas,[1] must be reduced to writing, even though it be private.

"Art. 1279. Should the law require the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties may compel each other to comply with said formalities from the moment in which consent and the other requirements, necessary for their validity, have taken place."

[3] While the foreign law is a question of fact, where it involves the construction of a written statute it may be a question of law (Chase, Steph. Dig. Ev. [2d Ed.] 146, note), but even then it is customary and proper to receive the testimony of those skilled in the foreign law for the purpose of construing and ascertaining the same.

---

[1] Note.—A peseta is equal to about 19 cents United States currency.

In this case, without such assistance, it would be very difficult for the court to say with certainty what, as between the parties, would be the effect of their failing to protocolize the contract in question. On this point, Mr. Magoon, a member of the bar, formerly law officer of the Insular Bureau of the War Department and adviser of that Department with reference to foreign laws, and who for a period of over two years was Provisional Governor of Cuba, gave the following testimony:

"A suit to recover money, what would be termed specific performance of this contract, could not be maintained in the courts of Cuba in its present form."

In answer to further questions, the witness said:

"Possibly it would be better for me to state what would be done under this contract than what would not. Under the established usage and court decisions, as well as the Code of Cuba, Mr. Reilly, seeking to enforce or recover for the matters and things contained in Exhibit 1 (the option), would be obliged to proceed as follows: He would cite Mr. Steinhart to appear before a notary to convert this instrument into a public document; the party cited could refuse to appear, refuse to take the necessary steps to convert it into a public document, and he would then bring an action to compel what might be termed specific execution (that is, to execute the document), not to carry it out, but to execute, it; and in that matter Mr. Steinhart would be heard as to his reasons for refusing to give the necessary compliance and to take the necessary steps to convert it into a public document. Without this instrument being a public document, so made with or by the consent of the parties or by operation of law (that is, of the court procedure), a suit could not be maintained upon it."

Speaking further of the rights of parties to a contract and referring to the course of the Cuban courts with respect thereto, the witness said:

"They (the courts) would give the remedy of compelling the reduction of that document into a public document, and, if that could be done, then you would have a remedy."

And again:

"It is very much like our statute of frauds. In the absence of this document, you could not enforce the contract."

[4] Accepting the analogy of the witness, and assuming the situation to be one where a contract is under the statute of frauds of the country, by the laws of which the sufficiency of its formation or solemnization is to be determined, the question is: Can such contract, if in form sufficient under the law of the forum, be there enforced? In short, does the objection go to the substance of the contract or merely to the evidence thereof? It is apparent that the difficulty goes, not to the mere evidence of the contract, but to its sufficiency. In other words, the attempt of the parties to the contract in question to privately formulate their agreement was wholly nugatory and void, and no contract whatever resulted between them, nor could one ever have been decreed to result, except after a further proceeding, the determination of which would depend upon the view of the facts to be taken by the Cuban court before which it was prosecuted.

The case seems to be clearly within the words of Mr. Justice Story (Conflict of Laws [8th Ed.] § 260), where he says:

"Another rule, * * * respecting the validity of contracts, is that all the formalities, proofs, or authentications of them, which are required by the lex loci, are indispensable to their validity everywhere else. * * * Thus if, by the laws of a country, a contract is void unless it is written on stamped paper, it ought to be held void everywhere, for, unless it be good there, it can have no obligation in any other country."

Among the cases cited by Mr. Justice Story, as authority for the law as stated in his text, is Bank of Rochester v. Gray, 2 Hill, 227, where it was held that the validity of a notarial protest of a foreign bill of exchange is to be determined by the lex loci contractus, and, where the latter renders a seal necessary, the protest must be under seal or it will be void elsewhere. With respect to contracts which, by the lex loci, are void under the statute of frauds, the same learned author says (Id. § 262):

"If such contracts, made by parol (per verba) in a country by whose laws they are required to be in writing, are sought to be enforced in any other country, they will be held void, exactly as they are held void in the place where they are made"—

although he notes that a distinction is drawn with respect to contracts affecting real property, where "the law of the place of the contract and that of the situs rei require different forms and solemnities to give validity to them."

For these reasons the judgment should be reversed, with costs, and the complaint dismissed, with costs. All concur.