HUGH J. REILLY, Appellant, *v.* FRANK STEINHART, Respondent.

Contract — when a contract entered into in Cuba and valid there may be enforced in this state.

A contract was entered into in Cuba between plaintiff and defendant whereby defendant was given an option to buy a con-cession for the construction of a railroad in that country. In this action, which is brought to recover for a failure to carry out its terms, it is claimed by defendant that a valid contract was not made under the law of that jurisdiction. The contract is good under our law, and, on examination of the law of Cuba, it appears that an action for the specific performance of this contract could not, while it remained in its present form, be maintained in the Cuban courts until the contract was converted into a public instru-ment. But if the defendant, after being cited to appear before a notary, refused to convert the contract into a public instrument, the plaintiff could maintain an action to compel him to authenticate it. Unless sufficient cause for refusal was shown, the execution of the contract as a public instrument would be decreed. No reason why its execution as such an instrument should be refused is apparent on the face of the option. Every element of a valid contract is disclosed in the writing. All that is lacking is a formality which the courts of Cuba had jurisdiction to supply. *Held*, that the law of Cuba affects the remedy only; that the law of this state follows the law of Cuba in recognition of the contract, but prescribes its own remedy and pur-sues its own procedure under which this action can be maintained.

*Reilly* v. *Steinhart*, 161 App. Div. 242, reversed.

(Argued March 13, 1916; decided April 11, 1916.)

APPEAL from a judgment, entered April 11, 1914, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William C. Rosenberg* and *Charles Grossman* for appellant. Assuming that the law of Cuba did require

the contract or obligation sued upon to appear in a public instrument, failure to have it so appear did not affect the substance of the contract, but only the remedy thereon in Cuba. (*Marie* v. *Garrison*, 13 Abb. [N. C.] 279; *G. B. Mfg. Co.* v. *Am. Bridge Co.*, 151 Fed. Rep. 871; *Lupton's Sons Co.* v. *Auto Club of America*, 225 U. S. 489; *Johnson* v. *New York Breweries*, 178 Fed. Rep. 513; *Richmond Cedar Works* v. *Buckner*, 181 Fed. Rep. 424; *Thomas* v. *Birmingham Ry. Co.*, 195 Fed. Rep. 340; *Brown* v. *Crabb*, 156 N. Y. 447; *Dodge* v. *Crandall*, 30 N. Y. 294; *Dupignac* v. *Bernstrom*, 76 App. Div. 105.)

*Morgan J. O'Brien* and *David T. Davis* for respondent. It would be unjust and contrary to law to permit the plaintiff to recover in New York against a defendant domiciled in Cuba on a Cuban transaction concerning Cuban concessions and Cuban lands upon which he could not recover in Cuba. (*Wright* v. *Weeks*, 25 N. Y. 153; *Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473; *Davis* v. *Davis*, 1 Abb. [N. C.] 140.)

CARDOZO, J. The plaintiff gave the defendant an option to buy a concession which had been granted to the plaintiff for the construction of a railroad in Cuba, as well as all the lands, rights, bonds and stocks of the company organized to construct the road. The agreement is in writing, and was made in Cuba. The option was given on January 22, 1907. It was to hold good till April 22, 1907. The price to be paid for the concession and for the property that went with it, if the defendant exercised the option, was $1,500,000. The price to be paid for the option itself was $50,000. Of this latter sum, $15,000 was paid in cash, and $35,000 was to be paid when the option matured. Payment has not been made, and to recover the money unpaid this action was brought.

At Trial Term the plaintiff had a verdict in his favor. The Appellate Division reversed the judgment and dis-

missed the complaint. The order shows that the reversal was on the single ground that under the law of Cuba a valid contract had not been made. That the contract was good if tested by our law, is undoubted. The effect of the Cuban law is the sole question before us.

The trouble with this option is said to be that it was not made a public document. A public document under the Cuban Civil Code is one "authenticated by a notary or by a competent public official with the formalities required by law." A contract which has been thus authenticated is said to have been "protocolized." Every contract which is intended to create, transmit, modify or extinguish property rights in real property must be expressed in a public instrument. Every assignment of rights "arising from an act contained in a public instrument" must be expressed in like form. If those requirements mean that until the instrument is protocolized, a contract does not exist, the plaintiff's right of action fails. The existence of a contract must be determined by the Cuban law (*Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473, 478; *Union Nat. Bank of Chicago* v. *Chapman*, 169 N. Y. 538). If the meaning is that a contract exists, but that until made a public instrument, a remedy in the courts of Cuba is withheld, the plaintiff must prevail. The law that governs the remedy is the law of New York.

In construing the Cuban law we must be guided by the evidence in this record, and thus guided, we think that the failure to authenticate the option as a public instrument affects, not the substance of the contract, but the remedy for its enforcement. We are told by the Cuban Civil Code that "a contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service" (Art. 1254); that "contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all

the consequences which, according to their character, are in accordance with good faith, use and law " (Art. 1258); that " consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract " (Art. 1262), and that " contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exists " (Art. 1278). The article which enumerates the contracts that must appear in a public instrument is article 1280; but immediately preceding it, provision is made by article 1279 that " should the law require the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties may compel each other to comply with said formalities from the moment in which consent and the other requirements necessary for their validity have taken place." The meaning of these provisions seems plain; but it is made still plainer by the testimony of an expert witness called by the defendant. His testimony is that an action for the specific performance of this contract could not, while it remained in its present form, be maintained in the Cuban courts. But if the defendant, after being cited to appear before a notary, refused to convert the contract into a public instrument, the plaintiff could maintain an action to compel him to authenticate it. Unless sufficient cause for refusal was shown, the execution of the contract as a public instrument would be decreed. No reason why its execution as such an instrument should be refused was apparent, according to the witness, on the face of the option. Every element of a valid contract was disclosed in the writing. All that was lacking was a formality which the courts of Cuba had jurisdiction to supply.

It seems obvious that the informality affects the remedy alone. The contract, though informal, exists. The jurisdiction of the courts to convert it into a public instrument is proof of its existence. Courts do not create contracts;

they do not compel men to contract. To say, therefore, that this contract might be protocolized against the defendant's protest is to deny that it is void. The requirement that it be protocolized is thus seen to be a rule of evidence. As such, it does not bind our courts (*Bristow* v. *Sequeville*, 5 Exch. 275; *Emery* v. *Burbank*, 163 Mass. 326, 327; Dicey Confl. of Laws [2d ed.], p. 710; Wharton Confl. of Laws [3d ed.], § 688). The rule is not changed because the contract has relation to real estate (*Polson* v. *Stewart*, 167 Mass. 211; *Clement* v. *Willett*, 105 Minn. 267; *Klinck* v. *Price*, 4 W. Va. 4). There is no attempt to give effect to it as a conveyance. The defendant's sole obligation is to pay a sum of money. If the obligation exists, the evidence that will establish its existence is to be determined by our law.

The defendant argues that the law of Cuba is similar in effect to our own Statute of Frauds. But the analogy is hardly helpful. Whether the Statute of Frauds " is addressed to the necessary constituent elements of the contract on the one hand, or to the evidence by which it shall be proved on the other " (*Emery* v. *Burbank, supra*) has been debated often and with varying conclusions (Wharton Confl. L. [3d ed.] § 690a *et seq.*). There is support for the view that it declares a rule of evidence and is part of the *lex fori* (*Leroux* v. *Brown*, 12 C. B. 801; *Crane* v. *Powell*, 139 N. Y. 379, 384; *Matthews* v. *Matthews*, 154 N. Y. 288; *Pritchard* v. *Norton*, 106 U. S. 124, 134). A distinction is drawn between provisions which require the "contract" to be in writing and those which require " a note or memorandum " of the contract (Wigmore on Ev. § 2454). Perhaps there may be other distinctions (*Marie* v. *Garrison*, 13 Abb. [N. C.] 210, 250; *Third Nat. Bank* v. *Steel*, 129 Mich. 434; Whart. Confl. of Laws, *supra*), but that is a controverted question (*Townsend* v. *Hargraves*, 118 Mass. 325, 335; *Wilson* v. *Lewiston Mill Co.*, 150 N. Y. 314; Dicey Confl. of Laws, 711, note), and we need not go into it now. The line of division

between the Statute of Frauds and the Cuban statute is a plain one, even though to some extent the effect of each may be the same. There is no remedy known to our law by which parties to an oral contract, which, under the Statute of Frauds, ought to be in writing, may be compelled to put it in writing, and thus satisfy the statute. Of course, we exclude cases where equity grants relief on the ground of fraud or part performance. Under the Cuban statute it is not the public instrument, but the contract back of it, that controls. The public instrument does not create the right. It registers an existing right. If either party refuses to make the registry complete, the law steps in and compels him to act. It is true that in resistance to a suit to protocolize the contract, he may show that for fraud or other cause the contract ought not to be enforced. Those defenses, however, would be equally available if the contract were one that did not need to be protocolized. They are equally available to the defendant when sued in our courts. The situation may be summed up in a sentence: the law of Cuba recognizes the contract as valid, but prescribes a double remedy. The law of New York follows the law of Cuba in recognition of the contract, but prescribes its own remedy, and pursues its own procedure.

We are unable for these reasons to concur in the conclusion of the Appellate Division that under the law of Cuba a valid contract was not created. In return for a promised payment, the plaintiff gave the defendant the right to buy a railroad. He became subject to an obligation, which the defendant could have enforced. If he had refused to fulfill his contract on the ground that it was not protocolized, the defendant could have made him protocolize it. The contract would have been enforcible at the instance of the defendant, and it is enforcible against him.

The judgment should be reversed, with costs to the

appellant in this court, and the case remitted to the Appellate Division to pass upon those questions of fact which have not yet been considered.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, HOGAN and SEABURY, JJ., concur.

Judgment accordingly.