(174 App. Div. 265)

## REILLY v. STEINHART.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. VENDOR AND PURCHASER ⬤⟳302—OPTIONS—LIABILITY FOR OPTION PRICE—¬ TITLE OF VENDOR.

The vendor under an option contract cannot recover the option price, where the evidence shows that he did not own the property and was not in a position to give title at any time during the life of the option.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 845–850; Dec. Dig. ⬤⟳302.]

2. APPEAL AND ERROR ⬤⟳1039(5)—REVIEW—SUFFICIENCY OF PLEADINGS.

A judgment for plaintiff will not be affirmed, on the ground that defendant's answer, alleging want of consideration, was insufficient, where defendant was precluded from amending by the ruling of the court that such answer was sufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4078; Dec. Dig. ⬤⟳1039(5).]

3. VENDOR AND PURCHASER ⬤⟳315(3)—OPTIONS—TITLE OF VENDOR—RECOVERY OF OPTION PRICE.

Where plaintiff contracted for the construction of an electric railway in Cuba, and in consideration thereof was to receive shares of stock and proceeds of the sale of bonds, the latter to be used only in building the road, and thereafter sold to defendant an option to purchase the concession, lands, stocks, bonds, etc., evidence *held* insufficient to show that at any time during the life of the option plaintiff had any right to transfer the property to the option holder, such as would justify the recovery of the price. ·

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 931; Dec. Dig. ⬤⟳315(3).]

4. VENDOR AND PURCHASER ⬤⟳18(4)—OPTION—RESCISSION.

Under an option whereby vendor agreed to sell a valid existing concession for the construction of an electric railroad in Cuba, together with stocks, bonds, lands, etc., and such concession had been forfeited, or was subject to forfeiture, for failure to expend 10 per cent. of the capital stock of such railroad on construction during the first two years, there was such partial failure of consideration for the sale as would, under

---

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Cuban law, justify defendant in refusing to accept title, and constitute a defense to an action for the unpaid balance on the option.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 23; Dec. Dig. ☞18(4).]

On remittitur from the Court of Appeals for further hearing. 217 N. Y. 549, 112 N. E. 468; 218 N. Y. ——, 112 N. E. 749. Reversed and remanded.

For former opinion, see 161 App. Div. 242, 146 N. Y. Supp. 534.

The complaint contains two counts. The first is to recover the sum of $35,000 and interest on a verbal option alleged to have been given by the plaintiff to the defendant, and the second is to recover a like amount on an option in writing subsequently executed and delivered by the plaintiff to the defendant on the 22d day of January, 1907. On the trial the plaintiff offered evidence under both counts; but the court ruled that the verbal option was invalid under our statute of frauds, and submitted the case to the jury under the second count only. The plaintiff recovered a verdict for the full amount claimed under the option in writing. That option is as follows:

"Whereas, I am the full owner of a concession heretofore granted me to build and construct a railway in the province of Santa Clara, known as the Cienfuegos, Palmira & Cruces Electric Railway & Power Company; and

"Whereas, there have been issued and are now deposited with Messrs. Opmann & Co., of Havana, Cuba, bonds of the said Railway & Power Company amounting to $2,000,000 United States currency and 19,470 shares of stock, par value each $100; and

"Whereas, on or about the 22d day of April, 1906, I verbally gave an option to Frank Steinhart, of Havana, to purchase all rights, the concession, lands purchased pertaining to the said Railway & Power Company:

"Now, therefore, for and in consideration of the sum of $15,000 to me in hand paid, the receipt whereof is hereby acknowledged, and an obligation on the part of the said Frank Steinhart to pay on April 22, 1907, a further sum of $35,000 in United States currency, I hereby confirm the said verbal option in writing, said option to continue until the said 22d day of April, 1907, up to which date and period the said Frank Steinhart may purchase from me all those matters heretofore mentioned, namely, the concession, lands, rights, bonds, stock, etc., meaning and indicating anything and everything pertaining to the said Railway & Power Company, for the sum of $1,500,000 United States currency, it being understood that the amount of $50,000 to be paid as option money, $15,000 of which have already been paid, shall be applied as part of the purchase money, if said purchase is completed before the expiration of this option, subject, however, that the said Frank Steinhart shall recognize a contract made with C. C. Vermulle for doing the engineer work at the rate of 6 per cent. on the stock for construction, and also a contract with Jose Antonio Frias for furnishing the necessary electric power required for lighting the city of Cienfuegos and other municipalities on the route of the said railway, as well as other electric power which may be required, on the condition that the said Frank Steinhart or his successors shall be paid at the rate of $40 per horse power per annum.                    Hugh J. Reilly."

Articles 1261 and 1265 of the Code of Civil Procedure of Cuba, with respect to contracts, provide as follows:

"Art. 1261. There is no contract unless the following requisites exist: 1. Consent of the contracting parties. 2. A definite object which may be the subject of the contract. 3. The cause [consideration] for the obligation which may be established."

"Art. 1265. Consent given by error, under violence, by intimidation or deceit shall be void."

The defendant appealed to this court from a judgment entered upon the verdict, from an order denying his motion for a new trial, and from an order granting an extra allowance. The other facts material to a decision of the appeal on this hearing are stated in the opinion.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, PAGE, and DAVIS, JJ.

Morgan J. O'Brien, of New York City (David P. Davis, on the brief), for appellant.

William C. Rosenberg, of New York City (Henry Wetherhorn and Charles Grossman, both of New York City, on the brief), for respondent.

LAUGHLIN, J. On the former hearing this court reversed the judgment and order and dismissed the complaint on the ground that the option in writing was invalid, owing to the fact that it was not "protocolized" or made a public instrument before a notary, as required by the law of the Republic of Cuba, where the property which was the subject of the option was (161 App. Div. 242, 146 N. Y. Supp. 534); and in our order of reversal it was recited that the reversal was on questions of law and fact, but that the only question of fact considered was whether the option was valid under the Cuban law, and that we did not deem it necessary to consider other facts, or to pass upon the weight of the evidence. The Court of Appeals held, in effect, that the option, which was accepted by appellant by the partial payment thereunder, was valid in so far as its validity depended upon the form and manner in which it was executed, and that an action could be maintained thereon in Cuba to "protocolize" it in order to afford a basis for enforcing specific performance thereof in the courts there, and reversed our decision, evidently upon the theory that the question depended upon the construction of the Cuban law which was a question of law (Bank of China v. Morse, 168 N. Y. 458, 61 N. E. 774, 56 L. R. A. 139, 85 Am. St. Rep. 876), but remitted the case to this court for a consideration of the questions of fact not passed upon (217 N. Y. 549, 112 N. E. 468).

The defendant thereupon moved to amend the remittitur, in order that this court might consider other questions of law argued, but not decided, here, as well as the other questions of fact. In an affidavit on that motion his attorney set forth nine other points, which were presented, but not considered by this court, and stated that he wished to have them considered on the rehearing in this court. The Court of Appeals denied the motion, and in a memorandum opinion held that the defendant, having seen fit to attempt to sustain our decision on the single point on which it was made, waived his right to have it sustained on any other question of law, or to have a reargument in that court, and therefore was not entitled to have this court pass upon other questions of law, as that might result in taking the case to the Court of Appeals piecemeal. The Court of Appeals, however, in the opinion denying the motion to amend the remittitur, stated that the "chief questions" which defendant desired to argue "involved in reality a consider-

ation of the facts, and upon a review of the facts by the Appellate Division may be considered by that court," and the Court of Appeals saw "no reason, therefore, to fear that injustice will be done." 218 N. Y. —, 112 N. E. 749 (May 9, 1916).

Counsel for the respondent now contends, not only that this court is precluded by the remittitur from considering any question of law, but also that the decision of the Court of Appeals is conclusive upon this court that the option was a valid and binding contract, upon which plaintiff is entitled to recover. As we view it, however, the Court of Appeals merely held that, so far as any question presented to that court by the appeal was concerned, all formalities necessary to render the option contract valid and enforceable had been complied with; but we do not understand that the Court of Appeals intended to preclude this court from considering all questions of fact not previously considered, including the questions arising with respect to the consideration for the option, for if the Court of Appeals agreed with the contention of counsel for the respondent that, since the appellant did not, within the time specified in the option, elect to take the property, the respondent's right to recover the balance of the consideration for the option is absolute, there would have been no occasion for remitting the case.

[1] Counsel for the respondent contends that, since appellant did not elect to take the property, it is wholly immaterial whether the respondent owned it or was in a position to give good title. Regardless of the question as to who had the burden of proof with respect to respondent's ownership of the property or his ability to convey and transfer it at the expiration of the option, we are of opinion that on proof of such inability he was not entitled to recover. See Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287, and McLaurin v. Cuba Company, 87 App. Div. 558, 84 N. Y. Supp. 526; s. c., 113 App. Div. 896, 99 N. Y. Supp. 1142, affirmed 190 N. Y. 507, 83 N. E. 1127.

[2] Counsel for respondent further contend that want or failure of consideration was not properly pleaded by appellant. That presents a question of law, which has not been decided, and under the remittitur we are precluded from deciding, and must assume, for the further purposes of the appeal, that the ruling of the trial court thereon was right. On that question the trial court ruled with appellant, and held there could be no recovery unless the respondent owned or controlled the property and was in a position to perform at the time the option expired, and submitted to the jury to determine as a question of fact his ownership or control of the consideration with respect to which appellant contracted. If the court had not ruled with appellant on the sufficiency of his plea of want of consideration, leave to amend might have been obtained, and therefore in no event could there be an affirmance on the theory that his pleading was insufficient. The respondent admitted that he did not own or have title to any of the property at any time during the option period, and there is no evidence that he had authority from the owner to transfer and convey it; but, on the contrary, it is fairly to be inferred that he did not have such authority. His testimony is to the effect that the Cienfuegos, Palmira & Cruces

Electric Railway & Power Company owned the property. That company was a corporation organized under the laws of the state of Maine, the capital stock of which was $2,000,000, consisting of 20,000 shares, of $100 each, to do business in Cuba as a railroad corporation. It filed its articles of incorporation as provided by the Railroad Law of Cuba on the 21st day of December, 1903, which gave it the right to construct and operate a railroad in Cuba, subject to the rejection of its plans by the railroad commission of that country, and with the approval of said commission the "expropriation" or condemnation of property by it for railroad purposes was authorized.

The only right, title, or interest with respect to the property which was the subject of the option, which the respondent had when he gave the option or at any time before it expired, arose under an agreement in writing entered into between him and said company on the 11th day of September, 1903, as amended by another agreement in writing on the 4th day of March, 1904. By those agreements the respondent agreed to construct for the company an electric railroad in the province of San Cruces, Cuba, 42.75 miles in length, and a reservoir, flume, tunnel, and power house for the generation and distribution of electric power for the operation of the railroad, and for lighting and commercial purposes, transmission lines, substations, with the necessary converters and transmitters, and the necessary wiring for electric lighting in several specified towns through or adjacent to which the railroad was to run, and a car barn and repair shop, according to certain plans and specifications, and to acquire for the company at his own expense "all land, franchises, right of way over public roads and private land, and water rights necessary or requisite for the construction of any of the aforesaid works," and respondent was obligated by said agreements to transfer said property by proper deeds or other instruments to the company, "to its own use, forever, or during the respective terms of said franchises, rights of way," etc.

The only consideration which the respondent was to receive from the company under said agreements was the sum of $80,000 in cash and 19,720 shares of the authorized capital stock of the company, and the company agreed to execute, sell, and dispose of $2,000,000 of first mortgage bonds, "or as much thereof as possible," to be secured by a first mortgage or a deed of trust "of all the property and assets" of the company "acquired and to be acquired"; and it was further provided in both agreements that said stock—the second agreement provided for the delivery to the respondent of 230 shares less than the first—was to be issued and delivered, and said bonds were to be negotiated, and said agreement and deed of trust for the bonds were to be executed and delivered, "as soon as may be after the execution of this agreement," and by the second agreement it was further provided that the company should deliver and pay over to the respondent the proceeds of the sale of the bonds "as fast as the same are negotiated for the purpose of the work of construction," to enable the respondent to perform his other obligations under the original agreement "and in full payment therefor," and it was agreed that the respondent would not be required to commence work under the contract "until the

said stock has been duly issued and delivered" to him, and until "said bonds have been issued, executed, and negotiated, and said mortgage has been duly issued and delivered as aforesaid, and then only after and as fast as the proceeds of the sale of said bonds or securities, or any part thereof, is transferred, delivered, and paid over to him."

The uncontroverted testimony of Mr. Vermulle, an engineer employed by the respondent, called as a witness for the appellant, showed that the construction work embraced in the contract between the respondent and the company was not commenced within two years after the articles of incorporation of the company were filed under the Cuban law, and that no money was expended on said construction, other than the sum of $4,255 paid to him on account of services, and that no money was expended or liability incurred for material for said construction, excepting to the extent of $300 or $400. Appellant offered to show by the same witness that the railroad had not been constructed at the time of the trial, but that evidence was excluded on objection interposed by the respondent to the effect that it was immaterial and irrelevant.

The respondent was required to furnish a bill of particulars of the property upon which he gave appellant an option, and in the verified bill of particulars furnished pursuant to the order of the court he stated that he gave the appellant an option to purchase from him the stock in said company which he owned, consisting of upwards of 19,-000 shares, of the par value of $100 each, the total authorized capital being 20,000 shares, together with all his right, title, and interest in and to said bonds and the proceeds thereof, which bonds he stated had been issued and were then on deposit with Upmann & Co., bankers, of Havana, Cuba, and all his right, title, and interest under said agreements of September 11, 1913, and March 4, 1904 with the exception of the cash payment of $80,000 to be made to him; and he therein claimed that said stock, and his right, title, and interest with respect to the bonds and under said agreements, carried with them "the control of said corporation which owns certain lands, property, and concessions in said Republic of Cuba, which the said corporation proposed to use and utilize in connection with the construction and operation of said electric railway between the cities of Cienfuegos, Palmira, and Cruces in said Republic of Cuba." He also therein stated that said stock was owned by him absolutely, and that the bonds were all deposited as aforesaid, and that he was entitled to the proceeds of the sale thereof in accordance with said agreements, and that he claimed to be entitled under said agreements to accept the bonds, instead of the proceeds thereof, "and thereby obtain the security of the said mortgage or deed of trust, which had been recorded in the proper office in the Republic of Cuba, as well as in the state of Maine, * * * and the rights thereby accruing by virtue of the provisions thereof, which mortgage provided that it should be a lien, not only on all the property and assets of the corporation then owned, but also on all the property and assets which might thereafter be acquired and transferred to the trustees named therein as security for such bonds," which property he therein enumerated and described.

The trial court ruled in favor of the respondent, to the effect that it was immaterial whether the ownership of the property was in the respondent or in the railroad company, provided he was in a position to transfer and convey it, or to have it transferred and conveyed, to the appellant at the expiration of the option. There is no evidence, other than the recital in the option and in the bill of particulars, with respect to where the bonds were or how they were held. The appellant moved for a dismissal of the complaint on the ground of variance between the option and the evidence with respect to the property which the respondent claimed was the property upon which the option was given. The motion was denied, but at the request of counsel for appellant the court instructed the jury to disregard the evidence in so far as it showed a variance between the option and the property claimed by respondent to be the subject thereof, which necessarily limited the plaintiff's right to recover to the terms of the written option; and that was the theory upon which the case was tried on the part of the respondent, for his counsel asked for instructions to the jury predicated thereon. The court in the charge explained the nature of an option contract to the jury, and instructed them that, if the party giving the option is in a position to perform, he is entitled to recover the consideration for the option, provided it is not exercised by the other party.

The court further instructed the jury, among other things, in substance as follows: That they must bear in mind "the importance of the true condition as to this property and its title at the time the option expired, because, notwithstanding the plaintiff may not have been the owner of the property he contracted to sell prior to that time, yet when the option expired, if he was in shape to perform, then he had done all that he was required to do, and would be entitled to recover the balance of the option price which the defendant had agreed to pay for the privilege of purchasing"; that one of the grounds upon which the right of plaintiff to recover on the written contract of option was contested by defendant was that the "plaintiff did not own this property," and that there was what is known under the Cuban law as error; that in the ordinary affairs of business, in all contracts for the purchase and sale of property, it is implied "that there are articles which have a potential existence and that the party contracting to sell has, at least, the title, or has some interest that he may transfer," and that in the absence of the potential existence of the property, "or in the absence of any rights, on the part of the party selling, which he has a right to transfer, manifestly the transaction would be without consideration, because that would present a case where one party was agreeing to pay a certain sum of money for which he got nothing in return from the other side"; that it was claimed by defendant that the right to construct the road had ceased by virtue of the laws of Cuba, and that there was not any property to transfer, "and that the plaintiff did not have title to the real estate and to the other elements of property which were covered by this option and which the option contract provided for the transfer of, at the election of the defendant"; that it was claimed by the defend-

ant "that the plaintiff was not the owner of these property rights that have been mentioned—that is, the property rights in the falls of the Hanabanilla river, and the property rights along the line of that river and along the line of the proposed construction, and whether that is so or not is submitted to your consideration. The plaintiff by his option contracted to transfer all of that property, and if, when the option expired, he was not the owner, and therefore was not in a position to transfer, why, manifestly, the option would be without consideration, and there would be that error, which is declared by the laws of the Republic of Cuba, and there could be no recovery for that reason. * * * You are to say whether * * * the plaintiff was the owner of the property which he contracted to sell, or was in a position to transfer it at the time the option expired. Unless he was there can be no recovery"—and that if that issue should be determined in favor of the defendant, then the plaintiff not only could not recover, but the defendant would be entitled to recover back the $15,-000 paid by him. The court also left it to the jury to determine whether the respondent owned the stock and bonds and was in a position to transfer them to appellant.

After charging the jury on the subject of fraud,. the court charged that the "burden is on the defendant to establish his defense, whether it is a defense regarding the existence of error, or a defense regarding fraud," and later on charged that if the jury find, "as the defendant alleges, that the contract was nullified either because of error on account of the nonexistence of the property or property rights on the part of the plaintiff, or because of fraud or deceit, then there can be no recovery on the part of the plaintiff," and the defendant would be entitled to recover back the $15,000 he paid.

The court refused to charge at the request of the plaintiff that he had performed his part of the contract when he delivered to the defendant the written option, on the ground that the request "eliminated the question as to the plaintiff's ability to carry out the option," and, modifying a request presented by respondent, charged that the defendant's obligation to pay $50,000 became absolute the moment he received from plaintiff the latter's agreement to convey upon payment of the purchase price, "provided the defendant's defense is not made out," and charged respondent's request that "it is immaterial whether defendant bought the property or not, or even demanded the property or not, as plaintiff was entitled to that sum of money," with the qualification, "That is true, providing the defenses set up are not made out."

Respondent also requested the court to charge that "it is immaterial to this action whether the plaintiff had title to any of the lands or concessions agreed to be conveyed, as long as the defendant did not demand or ask plaintiff to convey," but the court refused so to charge. Respondent further requested a charge that the fact that "there was not a present existing capacity to convey" was no defense, unless the defendant offered to pay the purchase price of the property and take title. That was also refused, and the court charged that, if the plaintiff "was not in shape to fulfill," the defendant was not bound to ex-

ercise the option before he would have a right to repudiate the contract.

Counsel for respondent asked the court to charge "that the question of person is 'immaterial,'" to which the court replied, "The plaintiff claims to have been the owner of the property of the railroad company, and if he was the owner of the property of the company at that time, of course, whatever the company possessed he possessed," and stated to the jury that "Reilly and the railway company are, you might say, really convertible terms," and that the plaintiff and the railroad company "were really one, so far as their rights are concerned here."

Appellant requested the court to charge that respondent did not own 19,470 shares of the stock of the company and could not transfer it on or before the expiration of the option, to which the court replied:

"I refuse to charge that as a proposition of law. *I submit the question to the jury.*"

Appellant also requested the court to charge that there was no evidence to show that plaintiff was the owner of the $2,000,000 of bonds of the company, or that he was able to transfer the same, but that, on the contrary, it appeared that he was entitled only to the proceeds from the sale of the bonds, coupled with the obligation to build the railroad therewith, to which the court said:

"I refuse to charge that proposition and *submit it to the jury as a question of fact* for them to determine."

[3] Assuming, as we must, the law to be as charged that, so far as the question of title to the property and rights covered by the written option is concerned, title in the company was equivalent to title in the plaintiff, and assuming, without so deciding, that the evidence sufficiently shows that the company did have title thereto, including the stock and bonds, the verdict is against the uncontroverted evidence, in so far as the jury have found that the respondent was in a position to transfer the stock and bonds to the appellant during the option period, and whether he was or was not in such position was expressly left to the jury as a question of fact. It is to be borne in mind that *all* of the stock was not to be issued to respondent, and that, in so far as it was, it and the proceeds of the sale of the bonds were to be delivered to him in consideration of his agreement to build and equip the railroad and power plant and acquire and transfer to the company all of said property, rights, and franchises. Therefore respondent was not in a position to transfer said stock or bonds to defendant, or to transfer them or to procure their transfer free and clear of the obligation to perform said contract. Moreover, the respondent was not entitled to the bonds, but merely to the proceeds upon a sale thereof by the company, and he was required to use said proceeds, as received by him, in the performance of his contract obligations.

In any view of the case the respondent was not in a position to transfer the concession to build the road, the lands and other property belonging to the company, because the only claim he had upon them was to have them covered by a first mortgage or deed of trust to be given by the company upon all its property to secure the bonds, and

there was no agreement on the part of the company to part with the beneficial ownership in the concession and other property and rights.

The verdict under the charge was necessarily predicated on another finding of fact, which, if not contrary to the undisputed evidence, is clearly against the weight of the evidence. One of the other nine points urged by appellant on the former argument in this court was that there was no consideration for the option contract on the theory that the concession which the respondent undertook to sell had expired. The Cuban law relating to railroads is embodied in an order of the Military Governor of Cuba. It authorizes foreign corporations to construct and operate railroads on filing a copy of their articles of incorporation with the mercantile registry of Havana and with the railroad commission, subject to the rejection of their plans by said commission. Although, in view of the provisions of the remittitur, we are not authorized to decide questions of law, and we have been reminded over and over again by counsel for respondent in their points that we are precluded from reviewing any ruling of the trial court on a question of law, and, as they state, "it must be assumed that every ruling of the trial court was correct," yet a review of the questions of fact requires a discussion of some of the legal questions.

We think, therefore, that we may with propriety observe that it seems to have been intended by the Cuban law to confer on a foreign corporation thus filing its articles of incorporation the same authority with respect to the construction and operation of a railroad as is conferred by chapters IV, V, VII, VIII, and X of the same order with respect to companies organized in Cuba, for it is declared in chapter XVII, section II, of the order, that a foreign corporation shall comply with all the requirements of the order, excepting, in effect, that the filing of a copy of the articles of incorporation shall be a substitute for the certificate of incorporation under the Cuban Law. Ten per cent. of the capital stock of the company not having been expended on the railroad within two years, as required by section XII of chapter IV, the concession was either forfeited or was subject to forfeiture, for the order provided that if such percentage is not so expended the right of the company to construct the railroad shall cease, and the fund of $200 per kilometer of road to be constructed, required to be deposited with the secretary of finance by section I of chapter IV as security, shall be forfeited to the state: Provided, however, that there shall be no forfeiture of such deposit when the commencement or completion of the railroad is prevented by "force majeure or by extraordinary fortuitous circumstances."

Counsel for respondent claimed upon the trial that these provisions were not self-operating, and that a failure to comply therewith merely subjected the company to an action for a forfeiture. There is no evidence with respect to the Cuban law on this subject. Counsel for appellant cites decisions in this jurisdiction which it is claimed sustain the contention that the statute is self-operating. They, however, are to the effect that, where a statute declares conditions precedent to the right of a corporation to continue its corporate existence, they are self-operating; but where the obligation to perform within a specified

time is imposed as a condition of the right to the enjoyment of a franchise or other right by a corporation, and performance is not made a condition precedent to the continuance of the life of the corporation, then the rule here is that its right cannot be questioned collaterally and that an action by the people is necessary to declare a forfeiture. See In re Kings County El. R. Co., 105 N. Y. 97, 13 N. E. 18. Both sides, however, claim that there is no justification for assuming that the rule of law in Cuba with respect to forfeiture is the same as that which obtains here, and counsel for respondent say that it would be a mere guess on the part of this court to attempt to rule on what the Cuban law is on that subject, and they draw our attention to uncontroverted evidence to the effect that the rule of stare decisis does not obtain in Cuba; that each case is decided there independently of the decisions in other cases. We therefore venture no opinion on the subject, and will assume, for the purposes of the appeal, that the trial court properly ruled on all questions of law.

The trial court first ruled that it was a question for the jury whether the franchise acquired by the company had potential existence at the time the option expired, thereby leaving it to the jury as a question of fact as to whether there was a forfeiture for the failure to expend the 10 per cent. during the first two years, and instructed the jury, in effect, that if there was a forfeiture there could be no recovery, for that would constitute a failure of consideration, and would be what is known as "error" under the Cuban law. At the close of the charge in chief, counsel for the appellant requested the court to instruct the jury, in substance, that if they found that defendant accepted the option on the erroneous belief that the company had a right to own, construct, and operate a railroad, and if they believed the testimony of the witness Vermulle that $200,000 was not expended on construction within the two years, then plaintiff could not recover, which the court charged with the qualification that it was correct if the erroneous belief on the part of defendant was produced by plaintiff's representations. The court also similarily qualified a like request made by appellant with respect to an erroneous belief on his part concerning the property on either side of and adjacent to the Hannabanilla river being included in the option, and charged it as modified. Counsel for appellant then asked the court if by "representations" was meant intentional fraud, and the court replied: "No; the mere fact that he was mistaken would not count." Counsel for appellant thereupon asked the court to charge that it was not necessary for defendant to prove, to entitle him to recover a verdict, that any of the representations made by respondent were fraudulent, although he claimed to have adduced sufficient proof of fraud, to which the court replied: "That is so, provided the jury find the question of error in favor of the plaintiff." These were the last instructions on the subject, excepting that the court charged as matter of law that the Cuban law with respect to forfeiture was self-operating, and refused to charge at the request of the plaintiff that the failure of the company to expend the 10 per cent. as required by the railroad law did not of itself ipso facto invalidate the concession, and that it could not be invali-

dated without proceedings on the part of the government. If these instructions were followed, and we must assume they were, the verdict is necessarily predicated on a finding, either that the testimony of Vermulle, which was not controverted, with respect to the amount expended, was untrue, or that the defendant did not accept the option in the belief, induced by the plaintiff, that the company had the right to own, construct, and operate the railroad.

[4] By the option the plaintiff clearly represented that there was a valid concession for the construction and operation of the railroad, and there is no reasonable doubt under the evidence that he accepted the option under that belief, induced by the respondent. The plaintiff represented in the written option that there was a valid railroad concession in the name of the company, which he owned and which he gave the defendant an option to purchase. We cannot allow the recovery to stand on the theory that the court, in finally holding that the Cuban Law was self-operating, erred, and that the finding of the jury on this question of fact is therefore immaterial, for that would be reviewing a ruling of the trial court on a question of law. Moreover, if the Cuban law with respect to forfeiture was not self-operating, it is manifest that in any event the concession was subject to forfeiture for failure to expend in construction the amount required by the law, and therefore was not what it was represented to be, and, consequently, there was a partial failure of consideration, or "error" under the Cuban law, which would justify appellant in refusing to take title and constitute a defense to an action for the balance unpaid on the option.

There were very many conflicting rulings in the submission of the case to the jury, and it is not at all clear upon what theory the verdict was rendered. We have examined the evidence on all the issues of fact submitted to the jury, and are of the opinion that the verdict on all of them, excepting those relating to fraud, is against the weight of the evidence.

The learned counsel for the appellant ask that the complaint be dismissed; but their argument necessarily rests on legal questions, which we cannot now decide. Neither the Court of Appeals nor this court, however, has considered the points upon which that argument is predicated, and they will remain for the trial court to decide in the first instance on the new trial, which the ends of justice require should be awarded.

It follows that the judgment and orders should be reversed on all the issues of fact other than fraud, and the issue with respect to the validity of the option under the Cuban law, which was heretofore considered by this court, and a new trial granted, with costs to appellant to abide the event. All concur.