RICHARD ARAMS, Plaintiff, *v.* ALICE F. ARAMS, Defendant.

Supreme Court, Special Term, New York County, November 9, 1943.

*Gunther Jacobson* for defendant.

*Louis Richman* for plaintiff.

WALTER, J. Plaintiff alleges, in his second cause of action, that he was the owner and entitled to the possession of certain stocks and bonds and that defendant converted them to her own use " at the City of Zurich, Switzerland, and elsewhere, as well as in the City of New York ". Defendant moves to dismiss, claiming that no cause of action is stated because the law of Switzerland is not alleged.

As it is difficult to conceive of a single act of conversion taking place in widely separated places, I think the complaint must be. construed as alleging that some of the stocks or bonds mentioned were converted in Switzerland and that others were converted in other places. The motion thus requires decision of the question upon whom, if anyone, rests the burden of showing the law of the place where the asserted wrong occurred where that place is outside of New York.

Strange as it may seem, there is no single decision which authoritatively establishes how that question should be answered if section 344-a of the Civil Practice Act had not been enacted (L. 1943, ch. 536, eff. Sept. 1, 1943), and as the motion is made after the effective date of that enactment it also becomes necessary to consider how that enactment is to be applied.

Section 344-a gives to the trial and appellate courts of this State an exceedingly sweeping discretionary power to take judicial notice of the law of foreign countries and of political subdivisions thereof, as well as of the law of sister States of the United States and of private acts and of ordinances and by-laws and executive rules and regulations, even though not pleaded by either party and even though discovered only by the court's own research. Prior rules respecting the pleading and proof of foreign law obviously must not be permitted to emasculate that new enactment, but if cases now can be decided according to whatever law the judge sees fit to apply and is able to discover by his own private researches, undisclosed to the parties, then much that hitherto has been regarded as essential to the right to pronounce judgment — the raising of an issue determinable by reference to the law of a specified place, and

an opportunity to know what the deciding tribunal is considering and to be heard with respect to both law and fact — would seem to have been abolished. I am unwilling to assume that a power so contrary to the plainest principles of fairdealing and due process of law was intended or has been conferred. (See *Lamphere* v. *Lang*, 213 N. Y. 585, 588; *Jackson* v. *Strong*, 222 N. Y. 149, 154; *Cohen* v. *City Company of New York*, 283 N. Y. 112, 117; *Clapp* v. *McCabe*, 84 Hun 379, 387–390, affd. 155 N. Y. 525; *Reynolds* v. *Stockton*, 140 U. S. 254, 264–266; *Standard Oil Co.* v. *Missouri*, 224 U. S. 270, 281; *Int. Com. Comm.* v. *Louis. & Nash. R. R.*, 227 U. S. 88, 93; *U. S.* v. *Abilene & So. Ry. Co.*, 265 U. S. 274, 288, 289; *Crowell* v. *Benson*, 285 U. S. 22, 48.)

I think this new enactment was intended merely to dispense with certain formalities respecting the manner in which the law of the State or country, whose law is first appropriately invoked and determined to be applicable, may be brought to the attention of the court by the parties, and, in case they omit something pertinent, to give the judge the right to make further researches in order to supplement or round out what the parties have presented so as to make an accurate determination as to what the law of that State or country really is. In short, the enactment was intended as a safety valve against miscarriages of justice due to mistake, and not as a charter to every judge to apply whatsoever law he likes and can find (see Ninth Annual Report of Judicial Council, 1943, pp. 35, 271–285).

In 1933 there was inserted in section 391 of the Civil Practice Act a provision that in determining foreign law the court may consult written authorities not offered in evidence (L. 1933, ch. 690), and it was held that that provision " refers to additional evidence and not to a case where no evidence was produced and where the case was not tried on the theory that the foreign law was different from our own " (*Cherwien* v. *Geiter*, 272 N. Y. 165, 168). That provision was repealed by the same law by which section 344-a was enacted because the new section covers the subject (L. 1943, ch. 536), and I think the same holding must be made with respect to the new section. Before the new section can become operative in any particular case there must have been an invocation of some particular foreign law by some party in some way which apprises the other party of the fact that that foreign law is being invoked, and opportunity must then be given to both parties to present their contentions with respect to what that foreign law is. Substantially, therefore, wherever, before the new section, a party was

under the necessity of pleading and proving foreign law that same party now is under a like necessity, subject only to the qualification that the consequences of partial failure to prove such law may be mitigated, in the discretion of the court, by the court's supplementing the proof by its own researches.

When a suit is brought in New York upon a contract made or a tort committed in another State or country, what is asked is that New York enforce an obligation created by the law of that State or country, and all that New York properly can enforce is such obligation as exists under that law. (*Cuba R. R. Co.* v. *Crosby,* 222 U. S. 473, 478; *Reilly* v. *Steinhart,* 217 N. Y. 549, 551; *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99, 110; *Salimoff & Co.* v. *Standard Oil Co.,* 262 N. Y. 220, 226; *Slater* v. *Mexican National R. R. Co.,* 194 U. S. 120, 126; *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347, 356.) If the contract were made or the tort committed in a State or country, the foundation of whose jurisprudence is known to be the common law, the presumption is indulged that the common law still prevails there and that it is the same as the common law of New York, and unless there is a showing contrary to that presumption the existence and extent of the asserted obligation are determined to be what the common law of New York says they are. (*Southworth* v. *Morgan,* 205 N. Y. 293, 296; *International Text Book Co.* v. *Connelly,* 206 N. Y. 188, 200, 201; *Matter of Marchant* v. *Mead-Morrison M. Co.,* 252 N. Y. 284, 303; *Weissman* v. *Banque De Bruxelles,* 254 N. Y. 488, 495; *Cherwien* v. *Geiter,* 272 N. Y. 165, 168, *supra; Read* v. *Lehigh Valley R. R. Co.,* 284 N. Y. 435, 441; *Zwirn* v. *Galento,* 288 N. Y. 428, 432.) No such presumption is indulged with respect to any State or country not known to have inherited or adopted the common law (*International Text Book Co.* v. *Connelly, supra; Savage* v. *O'Neil,* 44 N. Y. 298, 300, 301; *Cuba R. R. Co.* v. *Crosby,* 222 U. S. 473, 479, *supra*), and in suits brought here upon contracts made or torts committed in such States and countries there is presented the intensely practical question as to who must bear the burden and expense of showing the law of such State or country, i.e., whether the plaintiff must show that the foreign law is such as to create an obligation, or whether the defendant must show that the foreign law is such that no obligation exists thereunder.

Several cases in this State involving rights and obligations under the laws of countries which have not inherited or adopted the common law have asserted that, in the absence of a showing as to what the law of such country is, the law of New York

will furnish the rule for decision, not because there is any presumption that the foreign law is the same as New York law, but simply because New York law is the only law our courts know (*Monroe* against *Douglas,* 5 N. Y. 447, 452; *Savage* v. *O'Neil,* 44 N. Y. 298, 301, *supra; Latham* v. *de Loiselle,* 3 App. Div. 525, 527, affd. on opinion below 158 N. Y. 687), and in one of those cases there was expressly rejected a contention that one suing here upon a contract made in France must allege and prove as a part of his own case that the law of France was such as to create an obligation. (*Latham* v. *de Loiselle, supra.*) Nevertheless, in *Crashley* v. *Press Publishing Co.* (179 N. Y. 27, 32, 33) the complaint in an action for libelling plaintiff by publishing of him that he had taken part in a revolt in Brazil was held insufficient because it did not allege what the law of Brazil was with respect to the commission of the acts charged in the article; and in *Farrell* v. *Farrell* (142 App. Div. 605, 620, revd. on a question of practice only in 205 N. Y. 450), in which a claim for an allowance for dower was asserted, the court adverted to the absence of proof that dower existed under the law of Spain, and while the court also went further and said that the claim was not good under our law, the plain implication was that the party asserting a right of dower under the law of that country had the burden of showing that the law of that country created such right.

There then came the well-known case of *Cuba R. R. Co.* v. *Crosby* (222 U. S. 473, *supra*) in which, reversing the lower courts, it was held that an employee suing his employer for injuries sustained in Cuba could not recover without proving that the law of Cuba was such as to impose liability upon the employer. That case has been cited in our courts many times (see, for example, *Reilly* v. *Steinhart,* 217 N. Y. 549, 551, *supra; Loucks* v. *Standard Oil Co.,* 224 N. Y. 99, 106, 110, 111, *supra*), and in accordance with the above-stated holding thereof recoveries have been here refused because the foreign law was not shown by plaintiffs suing for personal injuries sustained in Peru (*Christie* v. *Cerro de Pasco Copper Corp.,* 214 App. Div. 820, affd. 243 N. Y. 557), and in Brazil (*Maia* v. *Lamport & Holt, Ltd.,* 141 Misc. 140), and for interest under a contract made in France (*Sirie* v. *Godfrey,* 196 App. Div. 529, 539), and for a conversion in Mexico (*Riley* v. *Pierce Oil Corporation,* 245 N. Y. 152, 154). In Federal cases, too, it has been held that one suing here in replevin upon an assertion of ownership and right of possession claimed to have been acquired in Russia must plead and prove the Russian law giving such ownership

and right of possession (*Banque de France* v. *Chase Nat. Bank of City of New York,* 60 F. 2d 703, 705); that one seeking to establish a maritime lien acquired in Russia must show the Russian law (*The Baymead,* 88 F. 2d 144, 147); and even that one suing here for supplies furnished a ship in Cuba must show the Cuban law (*The City of Atlanta,* 17 F. 2d 308, 310).

But *Cuba R. R. Co.* v. *Crosby* (*supra*) involved the master and servant relationship, as to which different States and countries are known to entertain widely different views. More specifically, that case related, as one court has expressed it, " to one of the refinements of the law of assumption of risk " (*The Hanna Nielsen,* 25 F. 2d 984, 987), and the opinion there delivered by Mr. Justice HOLMES contains the very plain intimation that " in dealing with rudimentary contracts or torts made or committed abroad, such as promises to pay money for goods or services, or battery of the person or conversion of goods, courts would assume a liability to exist if nothing to the contrary appeared " because " Such matters are likely to impose an obligation in all civilized countries " (*Cuba R. R. Co.* v. *Crosby,* 222 U. S. 473, 478). That is the same thought which was expressed in *Whitford* v. *The Panama Railroad Company* (23 N. Y. 465, 467, 468) and repeated with greater elaboration in *Parrot* v. *Mexican Central Railway* (207 Mass. 184, 191, 194). That phase of *Cuba R. R. Co.* v. *Crosby* (*supra*) was specifically applied in *Liachovitzky* v. *New York Life Insurance Co.* (126 Misc. 109) in which it was held to be unnecessary to plead Russian law in order to show that an obligation exists upon policies of life insurance issued in Russia, and also in *E. Gerli & Co.* v. *Cunard S. S. Co.* (48 F. 2d 115, 117) in which it was assumed that an agreement made in Italy for the carriage of goods creates obligations measured by the language used in the agreement.

Casual reading of *Riley* v. *Pierce Oil Corporation* (245 N. Y. 152, *supra*) might lead one to suppose that the " rudimentary contracts or torts " phase of *Cuba Railroad Co.* v. *Crosby* (*supra*) was there rejected, for the action there was for conversion and the complaint was dismissed because plaintiff did not show the law of Mexico where the conversion was claimed to have taken place. But the thing really in controversy in that case was plaintiff's title in or right of possession of oil taken out of the ground under a contract made in Mexico, and the case thus was very far from the ordinary case of conversion by taking property from one whose title does not depend upon a foreign country's conception of the nature of oil and

the rights of one who takes it out of the ground under a contract made in that country.

Taking all the cases together, I think the correct rule in relation to suits here upon contracts made or torts committed in States or countries which have not adopted or inherited the common law may be formulated thus: Where the complaint alleges facts which fairly may be assumed to create an obligation under the law of any civilized country, the plaintiff need not specifically allege the law of the State or country in which the things relied upon as giving rise to the asserted obligation took place, considerations of justice and convenience making it proper in such cases to cast upon the defendant the burden of showing, if that be the fact, that the law of such State or country is contrary to that assumption; but where the complaint alleges facts which do not make it reasonably certain that any civilized country would regard them as creating the asserted obligation, the plaintiff must allege the law of the State or country in which the things relied upon as giving rise to such obligation took place, considerations of justice and convenience making it proper in such cases to cast that burden upon the plaintiff. That is the rule which Professor Beale says '' should do much toward achieving substantial justice in this branch of the law '' (3 Beale on Conflict of Laws [1935] § 622A.2, last paragraph).

There is nothing in the complaint here under consideration which gives any reason to suppose that plaintiff's title to and right of possession of the stocks and bonds described in his second cause of action depend upon any peculiar or unusual contract or transaction, or even upon any contract made or transaction taking place in Switzerland, and it is altogether likely that under the law of Switzerland a taking of one person's property by another is a wrong which gives rise to an obligation to pay the value thereof. In such a case it is strained and artificial to say that his complaint is insufficient upon its face merely because it does not allege what the law of Switzerland is upon that subject. Justice and convenience are both best served by not requiring allegation and proof of what is obvious at least prima facie.

What burden in the way of showing foreign law may be cast upon plaintiff if his title shall be questioned and shown to depend upon contracts or transactions in foreign countries is not presented upon this motion and hence not considered.

As indicated above, however, plaintiff should state the place where each alleged conversion took place, and he should also

make his third cause of action more definite and certain by more intelligibly describing the items of property therein referred to.

The motion is, therefore, denied insofar as it asks for a dismissal of the second and third causes of action, but is granted to the extent of directing service of an amended complaint in which those causes of action are made more definite and certain.