INDUSTRIAL EXPORT & IMPORT CORP., Appellant, *v.* HONGKONG & SHANGHAI BANKING CORP., Respondent.

Argued January 2, 1951; decided April 12, 1951.

*Herbert G. Feinson* and *Joseph Lew* for appellant.  I. The Appellate Division overlooked that a hazard of double liability is not sufficient to prevent recovery by plaintiff.  (*Petrogradsky Mejdunarodny Kommerchesky Bank* v. *National City Bank of N. Y.*, 253 N. Y. 23; *Coler* v. *Corn Exch. Bank*, 250 N. Y. 136, 280 U. S. 218; *Newhall* v. *Longacre Bank*, 248 N. Y. 252; *Scheffer* v. *Erie Co. Sav. Bank*, 229 N. Y. 50.)  II. The Appellate Division overlooked that plaintiff's first cause of action is on the unused letter of credit.  (*Kerr S.S. Co.* v. *Chartered Bank of India, Australia & China*, 292 N. Y. 253.)  III. The Appellate Division overlooked that plaintiff's second cause of action is for damages for refusing to permit plaintiff to use, prior to February 12, 1946, the $7,000 it purchased and paid for.  IV. This is a case of unjust enrichment on an unused letter of credit.  The law of New York governs.  (*Singer* v. *Yokohama Specie Bank, Ltd.*, 293 N. Y. 542; *Banque Mellie Iran* v. *Yokohama Specie Bank, Ltd.*, 188 Misc. 346, 274 App. Div. 768; *Union Nat. Bank of Chicago* v. *Chapman*, 169 N. Y. 538; *Pritchard* v. *Norton*, 106 U. S. 124; *Meacham* v. *Jamestown, F. & C. R. R. Co.*, 211 N. Y. 346; *Richard* v. *American Union Bank*, 241 N. Y. 163; *Central Hanover Bank & Trust Co.* v. *Siemens & Halske AG.*, 15 F. Supp. 927, 84 F. 2d 993.)  V. The law of China does not bar recovery in New York.  (*Central Hanover Bank & Trust Co.* v. *Siemens & Halske AG.*, 15 F. Supp. 927, 84 F. 2d 993; *South American*

*Petroleum Corp.* v. *Colombian Petroleum Co.,* 177 Misc. 756; *Plesch* v. *Banque Nationale de la Republique d'Haiti,* 273 App. Div. 224, 298 N. Y. 573; *Bollack* v. *Societe Generale, etc., en France,* 263 App. Div. 601; *Myles* v. *Cuba R. R. Co.,* 182 Misc. 169, 182 Misc. 175; *Moscow Fire Ins. Co.* v. *Bank of New York & Trust Co.,* 280 N. Y. 286, 309 U. S. 624; *Reilly* v. *Steinhart,* 217 N. Y. 549; *Sliosberg* v. *New York Life Ins. Co.,* 217 App. Div. 685.)

*Thomas J. Minturn* and *George W. Kilgus* for respondent. I. The rights of the parties are governed by the laws of China. (*Balee* v. *Hidalgo Co. Water Improvement Dist. No. 4,* 229 App. Div. 660; *Werfel* v. *Zivnostenska Banka,* 287 N. Y. 91.) II. Under laws of China the funds are blocked and plaintiff cannot recover at the present time. III. The burden was on plaintiff to prove its right to recover under the Chinese law. (*Crashley* v. *Press Pub. Co.,* 179 N. Y. 27; *Savage* v. *O'Neil,* 44 N. Y. 298; *Farrell* v. *Farrell,* 142 App. Div. 605; *Schweitzer* v. *Hamburg-Amerikanische Packetfahrt AG.,* 149 App. Div. 900; Banking Law, § 204-a, subd. 3, par. [a].) IV. Plaintiff has not shown a proper demand. (*Silverman* v. *National City Bank of N. Y.,* 133 Misc. 201; *Stevens* v. *First Nat. Bank of Painted Post,* 259 App. Div. 34; *Southwick* v. *First Nat. Bank of Memphis,* 84 N. Y. 420.)

LEWIS, J. This action involves a transaction in international exchange which took place just prior to the outbreak of World War II.

At the close of a jury trial in Supreme Court both parties moved for a directed verdict. Thereafter the Trial Justice directed a verdict in favor of the defendant dismissing the complaint " for failure of proof, *without prejudice* ".* At the Appellate Division the judgment entered at Trial Term was affirmed, two Justices dissenting.

The record discloses the following undisputed facts: The plaintiff, Industrial Export and Import Corp., is a New York corporation whose officers and sole stockholder, at the time the transaction here involved took place, were residents of Shanghai, China. The business of the plaintiff corporation — the importa-

---

. * Wherever italics appear in this opinion they are supplied unless otherwise indicated.

tion of leather into China — was carried on from Shanghai. The defendant Hongkong & Shanghai Banking Corp. is a British corporation organized in the Colony of Hongkong with branches in Shanghai and New York City.

In April, 1941, in accord with an " agreement " between the United States and China, a fund of American dollars was created in China to be used for the purpose of facilitating and increasing imports into that country. A board, called the Stabilization Board of China — an instrumentality apparently created under a plan formulated by the Governments of United States, Great Britain and China — was established as an agency of the Chinese Government to control the fund mentioned above and the rate of exchange and to regulate imports so that they would meet essential requirements of the Chinese people. Persons wishing to import goods into China to be paid for by American dollars were *required* to obtain those dollars from the Stabilization Board or from a bank designated by the board.

In October, 1941, plaintiff desired to import into China a quantity of " sole leather butts " to be paid for with American dollars. To that end, on October 15, 1941, plaintiff made written application to the Shanghai branch of the defendant bank for $14,000 in American dollars to pay for such imports. The fact will become important that by that application plaintiff agreed to " resell to the Bank at the rate at which purchased any or all of the aforementioned foreign exchange acquired pursuant to this application in the event that the foreign exchange herein applied for is subsequently found not to have been used for the purpose of financing imports as described herein." Thereafter the defendant bank submitted to the Stabilization Board plaintiff's application with several others and in doing so defendant agreed to resell to the Stabilization Board at the rate at which purchased any or all of the foreign exchange not used as specified therein. On November 19, 1941, the board informed defendant in Shanghai that plaintiff's application had been approved to the extent of 7,000 American dollars. On November 21, 1941, the Stabilization Board of China cabled Federal Reserve Bank in New York directing it to pay defendant's New York office for the account of its Shanghai office a sum of American dollars which included 7,000 American dollars to be available for imports to be made by plaintiff. Upon receiving notice from its New

York office that the American funds were available, defendant's Shanghai office notified plaintiff that its request for American funds had been approved to the extent of $7,000 and that immediate cash payment (in Chinese dollars) was necessary. Thereupon, on December 3, 1941, plaintiff filed an application with defendant at Shanghai requesting it to issue a letter of credit for the 7,000 American dollars to Lubell-Hochmeyer, Inc., in New York City, which sum was to be paid Lubell-Hochmeyer upon presentation of proof of shipments to plaintiff in China. With this application plaintiff delivered to defendant bank at Shanghai a check for 132,544.38 *Chinese* dollars, that amount of Chinese currency being the equivalent of 7,000 American dollars at the then current rate of exchange. In accord with instructions by the Stabilization Board, the defendant bank converted plaintiff's check into specie Chinese dollar notes and deposited that currency in the bank vaults as one of the board's designated depositories in Shanghai. On December 4, 1941, defendant's Shanghai office cabled its New York office to issue to Lubell-Hochmeyer in New York City a letter of credit in the amount of $7,000.

Shortly after the arrangements outlined above had been completed, there occurred the Japanese attack on Pearl Harbor; the merchandise covered by the letter of credit was never shipped from the United States to China and the letter of credit — which had a terminal date of February 15, 1942 — expired unused. During the war, which broke out on December 8, 1941, the Japanese took over defendant's Shanghai branch; the officers and personnel of plaintiff's corporation were interned and were not released from concentration camps until August, 1945. In the meantime on April 1, 1944, the Central Bank of China had been appointed trustee to liquidate the affairs of the Stabilization Board. On February 12, 1946, the Central Bank of China notified all banks that all funds furnished by the board prior to December 8, 1941, "for goods which were never imported to China should not be dealt with pending the examination of the affairs of the Board."

By this action plaintiff seeks judgment against the defendant for 7,000 *American dollars,* the theory of the action being "for money had and received by the defendant to the use of the plaintiff, no part of which has been paid although duly

demanded.'' It thus becomes necessary to our decision to determine whether, upon the facts disclosed by this record, the law to be applied is that of China or the United States.

At the Appellate Division — where the Trial Term judgment was affirmed — the majority held that '' * * * This was a Chinese transaction in its inception and completion and on this record the Board's regulations are applicable.'' (See 275 App. Div. 390, 391–394.) The minority opinion did not hold that the law of the United States was applicable but rather that the defendant had the burden of going forward with evidence to establish '' * * * the defenses that plaintiff has sued the wrong party, that plaintiff is not the real party in interest, or that plaintiff is precluded from recovery by Chinese law as it existed in 1941, or by Chinese exchange restrictions now in force.'' (See *id.*, p. 397.)

We agree with the courts below that, as to the transaction here involved, the law of China is controlling. As far as plaintiff is concerned the entire transaction took place in China. Reduced to its simplest terms, the transaction was as follows: Plaintiff has deposited with the defendant bank, under rules and regulations of the Stabilization Board of China, *Chinese currency* in amount equivalent to 7,000 American dollars which served as the basis for issuance of the letter of credit for which arrangements outlined above were made. The amount of Chinese currency thus deposited with the defendant in Shanghai was earmarked for the Stabilization Board of China and was deposited and kept in the form of specie notes in vaults of the defendant bank, as one of the board's prescribed depositories in Shanghai for Chinese National dollar payments of exchange approved by the board and according to its instructions. The only act to be performed by the defendant bank in New York was to issue there the letter of credit. Such a letter of credit was issued in New York but it expired before it was used. Had the letter of credit been used, as was originally intended, the Chinese dollars would have become the property of the Stabilization Board of China, not of the defendant bank. Inasmuch as the letter of credit expired before it was used, the plaintiff corporation — subject to any requirements of the law of China — may become entitled to receive back in China the Chinese dollars which it had deposited as a basis for the issuance

of the letter of cerdit. Clearly, the transaction took place in China. Plaintiff is not suing upon the letter of credit, nor for any breach of agreement to issue the letter of credit, nor for any failure to perform any agreement relating to the letter of credit. In those circumstances we agree with the courts below that the law of China is applicable. (*Werfel* v. *Zivnostenska Banka,* 287 N. Y. 91; and see *Balee* v. *Hidalgo Co. Water Improvement. Dist. No. 4,* 229 App. Div. 660.)

The question is raised by defendant's brief as to who has the burden of proving the Chinese law. It is defendant's contention that inasmuch as China is not one of the nations whose laws are based upon the English common law, the burden was upon the plaintiff to establish that it is entitled to recover under the laws of China. In support of that argument defendant cites *Crashley* v. *Press Pub. Co.* (179 N. Y. 27), and *Savage* v. *O'Neil* (44 N. Y. 298). The plaintiff relies on *Cuba R. R. Co.* v. *Crosby* (222 U. S. 473) as support for its argument that in dealing with rudimentary contracts or torts made or committed abroad, such as promises to pay money for goods or services, or battery of the person or conversion of goods, courts would assume a liability to exist if nothing to the contrary appeared. A close examination of the opinion in that case discloses that the rule it announces supports the position of the defendant-appellant in the case at bar. The case involved a suit by an employee against his employer for injuries resulting from a defective machine. The accident occurred in Cuba. In the course of the opinion it is said (per HOLMES, J.) at page 478: " * * * when an action is brought upon a cause arising outside of the jurisdiction it always should be borne in mind that the duty of the court is not to administer its notion of justice but to enforce an obligation that has been created by a different law. *Slater* v. *Mexican National R. R. Co.,* 194 U. S. 120, 126. The law of the forum is material only as setting a limit of policy beyond which such obligations will not be enforced there. *With very rare exceptions the liabilities of parties to each other are fixed by the law of the territorial jurisdiction within which the wrong is done and the parties are at the time of doing it.* * * * [p. 479] We repeat that the only justification for allowing a party to recover when the cause of action arose in another civilized jurisdiction is a well founded

belief that it was a cause of action in that place. The right to recover stands upon that as its necessary foundation. *It is part of the plaintiff's case, and if there is reason for doubt he must allege and prove it.* \* \* \* "

We believe the rule of the *Crosby* case (*supra*) has application to our present problem and that where, as here, it appears that the transaction involved was not an ordinary commercial transaction but one in which the parties were operating under particular Chinese laws and regulations pertaining to foreign exchange, the burden is upon the plaintiff to establish its right to recover under the Chinese law. (*Christie* v. *Cerro de Pasco Copper Corp.*, 214 App. Div. 820, affd. 243 N. Y. 557; *Crashley* v. *Press Pub. Co.*, 179 N. Y. 27, *supra*.)

In the absence of proof by the plaintiff as to the exact legal relationship between the plaintiff, the defendant, and the Stabilization Board created by this particular transaction under the laws of China, it is impossible to determine whether plaintiff's cause of action is against the defendant as an independent party to the transaction, or against the Stabilization Board on the theory that the defendant acted merely as agent for the board, in which event the board should be named as defendant. However, even if we assume that the defendant bank acted independently in the transaction and that the plaintiff might properly demand from it the return of its money, it does not follow that plaintiff is entitled to the relief it seeks in this action. Defendant, although not required to do so, produced evidence that in 1946, the Central Bank of China — successor to the Stabilization Board of China — notified defendant as follows:

" The Stabilization Board of China at its final meeting on March 31, 1944, adopted a resolution appointing the Central Bank of China as its trustee as from April 1, 1944, *for the purpose of handling the unfinished business of the Board.*

" It has come to our notice that certain of the appointed and/or approved banks hold margin accounts in foreign currencies in the names of importers representing exchange provided by the Board prior to December 8, 1941, *in respect of which the goods were never imported to China.* It would appear, therefore, that *the Board* may have claims in respect of these margin accounts. We therefore notify you that these

margin accounts should not be dealt with pending examination of the affairs of the Board by the Central Bank of China, which it hopes to undertake as soon as practicable."

It would thus seem that, under the laws of China, the funds in question are temporarily blocked and plaintiff cannot recover at the present time.

We have seen that when in 1941 the plaintiff, as an importer, wished to import merchandise into China to be paid for in American dollars, it was required of plaintiff as such importer that it submit to the rules and regulations of the Stabilization Board. Indeed, upon this subject there is undisputed testimony from plaintiff's own witness — the secretary-treasurer of the corporation and the husband of its president, who was its sole stockholder — that in 1941, when this transaction had its inception, American dollars could not be acquired in China " *except with the approval of the Stabilization Board* ". Presumably that was the reason why the plaintiff, in making its written application to the defendant bank " * * * for Foreign Exchange to Finance Imports Permitted by the Stabilization Board of China " agreed " *unconditionally* " to resell to the bank at the rate at which purchased any or all foreign exchange acquired pursuant to its application in the event that the foreign exchange then applied for was subsequently found not to have been used for the purpose of financing imports as described in the application. This agreement by the plaintiff — made " unconditionally " as one of the bases of its application and in compliance with the Stabilization Board's rule, mentioned above — is disregarded by the plaintiff. In our view, however, it is a decisive factor to be considered. The record makes it clear that in this transaction the defendant bank merely acted under instructions from the Stabilization Board as to refunds and repayments. It further appears from undisputed testimony by a witness for the defendant that the 132,544.38 Chinese dollars delivered by plaintiff to the defendant, were " in accordance with the instructions of the Board, deposited and kept in the form of specific [*sic*] notes in the vaults of the [defendant] bank as one of the Board's prescribed depositories in Shanghai of Chinese National dollar payments for exchange approved by the Board and instructions that such deposit should be made by the bank was contained in the Board's

instructions ". Thus, under the rules and regulations of the Stabilization Board, defendant cannot turn over the Chinese dollars in its possession without the approval of that board. Nor can the defendant bank pay to plaintiff 7,000 American dollars as that would be a breach of the plaintiff's agreement which provided that those American dollars were to be used only for the purpose of importing merchandise into China — which never did eventuate.

Furthermore, in view of the fact that the letter of credit for 7,000 American dollars expired and no shipment of merchandise purchased with the proceeds thereof was ever made to China, the plaintiff is prevented from claiming that sum in American dollars by reason of its agreement made in 1941 as part of its application to the defendant in Shanghai for foreign exchange: " We agree not to require from the Bank actual delivery of the foreign exchange herein requested until such time as shipping space covering the imports described herein has been obtained and confirmation to this effect has been received from the shippers abroad."

In view of the circumstances hereinbefore mentioned, including the agreements by the plaintiff upon which its application for foreign currency was based; and it appearing that, within the terms of the transaction, there have been no imports of merchandise into China, the defendant bank would not be required to comply with plaintiff's demand to pay to it 7,000 American dollars — as claimed in the complaint herein — since American dollars were to be made available only under plaintiff's agreement and the express terms of its application to the defendant and only for the specific purpose of import into China.

Nor do we believe that, under the provisions of the ban mentioned in the notice by the Central Bank of China quoted above, the defendant bank can properly return to plaintiff at the present time the Chinese funds — 132,544.38 Chinese dollars — which the defendant holds as an authorized depository for the Stabilization Board. Until the appropriate Chinese authorities have finished their " pending examination of the affairs of the Board " and have unblocked the funds here involved, the defendant bank may not legally deal in these accounts.

The courts below have rightly held that plaintiff has failed to prove that, under the laws of China, it is presently entitled to obtain the relief demanded in its complaint. The phrase " without prejudice ", inserted in the judgment entered at Trial Term which stands affirmed as it comes to us, will enable the plaintiff to establish in a new action its right, if any, under applicable law, to recoup funds with which it parted in 1941 when it arranged with the defendant in Shanghai for issuance of a letter of credit payable to Lobell-Hochmeyer, Inc., in New York upon presentation of proof of the shipment of certain goods to the plaintiff.

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgment affirmed.