Leo WALTON, Plaintiff-Appellant,

v.

ARABIAN AMERICAN OIL COMPANY, Defendant-Appellee.

No. 291, Docket 23987.

United States Court of Appeals Second Circuit.

Argued March 15, 1956.

Decided May 15, 1956.

O'Neill, Higgins & Latto, New York City, John V. Higgins, New York City, of counsel, for plaintiff-appellant.

Reilly & Reilly, New York City, for defendant-appellee.

Before FRANK, LUMBARD and WATERMAN, Circuit Judges.

FRANK, Circuit Judge.

Plaintiff is a citizen and resident of Arkansas, who, while temporarily in Saudi Arabia, was seriously injured when an automobile he was driving collided with a truck owned by defendant, driven by one of defendant's employees. Defendant is a corporation incorporated in Delaware, licensed to do business in New York, and engaged in extensive business activities in Saudi Arabia. Plaintiff's complaint did not allege pertinent Saudi Arabian "law," nor at the trial did he prove or offer to prove it. Defendant did not, in its answer, allege such "law," and defendant did not prove or offer to prove it. There was evidence from which it might have been inferred, reasonably, that, under well-established New York decisions, defendant was negligent and therefore liable to plaintiff. The trial judge, saying he would not take judicial notice of Saudi-Arabian "law," directed a verdict in favor of the defendant and gave judgment against the plaintiff.

1. As jurisdiction here rests on diversity of citizenship, we must apply the New York rules of conflict of laws.[1] It is well settled by the New York decisions that the "substantive law" applicable to an alleged tort is the "law" of the place where the alleged tort occurred. See, e. g., Conklin v. Canadian-Colonial Airways, Inc., 266 N.Y. 244, 248, 194 N.E. 692. This is the federal doctrine; see, e. g., Slater v. Mexican National Railroad Co., 194 U.S. 120, 24 S. Ct. 581, 48 L.Ed. 900. Cuba R. Co. v. Crosby, 222 U.S. 473, 32 S.Ct. 132, 56 L. Ed. 274. This doctrine is often said to be based on the motion that to hold oth-

[1]. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

erwise would be to interfere with the authority of the foreign sovereign.[2]

It has been suggested that, where suit is brought in an American court by an American plaintiff against an American defendant, complaining of alleged tortious conduct by the defendant in a foreign country, and that conduct is tortious according to the rules of the forum, the court, in some circumstances, should apply the forum's tort rules. See Morris, The Proper Law of a Tort, 64 Harv.L.Rev. (1951) 881, criticizing, inter alia, Slater v. Mexican National Railroad, 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900.[2a] There, and in 12 Modern L.Rev. (1949) 248, Morris decries, as "mechanical jurisprudence," the invariable reference to the "law" of the place where the alleged tort happened.[2b] There may be much to Morris' suggestion; and a court —particularly with reference to torts, where conduct in reliance on precedents is ordinarily absent [3]—should not perpetuate a doctrine which, upon re-examination, shows up as unwise and unjust.[4] Although in a diversity case a federal court must apply the "substantive" conflicts rules of the state in which the court sits, that duty perhaps does not require acceptance of state court decisions which are clearly obsolescent; see the concurring opinion of Mr. Justice Frankfurter in Bernhardt v. Polygraphic Co. Inc., 350 U.S. 198, 76 S.Ct. 273.[4a] But we see no signs that the New York decisions pertinent here are obsolescent.[5]

■■■■■ 2. The general federal rule is that the "law" of a foreign country is a fact which must be proved.[6] However,

2. See, e. g., American Banana Co. v. United Fruit Co., 213 U.S. 347, 356, 29 S. Ct. 511, 53 L.Ed. 826.

A variant but related notion is that the foreign sovereign alone has the power to create a legal obligation resulting from an act done within the territory over which it has "jurisdiction", and that, if that sovereign does create such an obligation, that obligation accompanies the person of the defendant everywhere. See, e. g., Western Union Telegraph Co. v. Brown, 234 U.S. 542, 547, 34 S.Ct. 955, 58 L.Ed. 1457; Loucks v. Standard Oil Co. of N. Y., 224 N.Y. 99, 120 N.E. 198. For criticisms of this view, see, e. g., Cook, The Logical and Legal Bases of the Conflict of Law (1942) 7, 311 et seq.; Dodd, 39 Harv.L.Rev. (1926) 533, 536–537.

For a different view, see, e. g., Judge Learned Hand in Guiness v. Miller, D.C., 291 F. 768, 770; Direction der Disconto-Gesellschaft v. U. S. Steel Corp., D.C., 300 F. 741, 744.

2a. Cf. Wightman, J., and Willes, J., in Scott v. Lord Seymour, 1 H. & C. 219, 233–234, 236, 158 Eng.Rep. 865, 871–873, cited in the dissenting opinion in Slater v. Mexican Nat. R. R. Co., 194 U.S. at page 132, 24 S.Ct. 581.

2b. Cf. Stumberg, Conflict of Laws (1951), 201 et seq.

3. Note the reference in Cuba R. Co. v. Crosby, 222 U.S. 473, 480, 32 S.Ct. 132, 133, to parties who "enter into civil relations" and to a "rule * * * under which the parties dealt." Those phrases are awkward in their application to what we call torts.

4. See, e. g., Seavey, The Waterworks Cases and Stare Decisis, 66 Harv.L.Rev. (1952) 84; Cf. Denning, The Road to Justice (1955) 6, 92, 98.

4a. Cf. Cooper v. American Airlines, 2 Cir., 149 F.2d 355, 359; Pierce v. Ford Motor Co., 4 Cir., 190 F.2d 910; Trowbridge v. Abrasive Co., 3 Cir., 190 F.2d 825.

5. Were this not a diversity case, it might perhaps be appropriate to suggest that the Supreme Court should reconsider the accepted doctrine (as to the complete dominance of the "law" of the place where the alleged tort occurred) which seems to have been unduly influenced by notions of sovereignty a la Hobbes. See Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S.Ct. 526, 51 L.Ed. 834 (referring to Hobbes and Bodin), cited in American Banana Co. v. United Fruit Co., 213 U.S. 347, 358, 29 S.Ct. 511, 53 L.Ed. 826; cf. Jaffe, Book Rev., 66 Harv.L.Rev. (1953) 939, 941 as to the reification of the "notion of power."

6. See, e. g., Black Diamond S.S. Corp. v. Robert Stewart & Sons, 336 U.S. 386, 396–397, 69 S.Ct. 622, 93 L.Ed. 754; Cuba R.R. Co. v. Crosby, 222 U.S. 473, 479, 32 S.Ct. 132, 56 L.Ed. 274; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 9 S.Ct. 469, 32 L.Ed. 788; U. S. v. Wiggins, 14 Pet. 334, 39

under Fed.Rules Civ.Proc. rule 43(a), 28 U.S.C.A., a federal court must receive evidence if it is admissible according to the rules of evidence of the state in which the court sits. At first glance, then, it may seem that the judge erred in refusing to take judicial notice of Saudi Arabian "law" in the light of New York Civil Practice Act, § 344-a.[7] In Siegelman v. Cunard White Star, 2 Cir., 221 F.2d 189, 196–197, applying that statute, we took judicial notice of English "law" which had been neither pleaded nor proved. Our decision, in that respect, has been criticized;[8] but it may be justified on the ground that an American court can easily comprehend, and therefore, under the statute, take judicial notice of, English decisions, like those of any state in the United States.[9] However, where, as here, comprehension of foreign "law" is, to say the least, not easy, then, according to the somewhat narrow interpretation of the New York statute by the New York courts,[9a] a court "abuses" its discretion under that statute perhaps if it takes judicial notice of foreign "law" when it is not pleaded,[10] and surely does so unless the party, who would otherwise have had the burden of proving that "law," has in some way adequately assisted the court in judicially learning it.[11]

3. Plaintiff, however, argues thus: The instant case involves such rudimentary tort principles, that the

---

U.S. 334, 10 L.Ed. 481; Church v. Hubbart, 2 Cranch 187, 6 U.S. 187, 236–237, 2 L.Ed. 249; Liechti v. Roche, 5 Cir., 198 F.2d 174, 176; U. S. ex rel. Zdunic v. Uhl, 2 Cir., 137 F.2d 858, 861; Dickerson v. Matheson, 2 Cir., 50 F. 73, 76.

7. It reads, in part:
"A. Except as otherwise expressly required by law, any trial or appellate court, in its discretion, may take judicial notice of the following matters of law:
"1. A law, statute, proclamation, edict, decree, ordinance, or the unwritten or common law of a sister state, a territory or other jurisdiction of the United States, or of a foreign country or political subdivision thereof. * * *
"C. Where a matter of law specified in this section is judicially noticed, the court may consider any testimony, document, information or argument on the subject, whether the same is offered by counsel, a third party or discovered through its own research.
"D. The failure of either party to plead any matter of law specified in this section shall not be held to preclude either the trial or appellate court from taking judicial notice thereof."

8. Busch, When Law is Fact, 24 Fordham L.Rev. (1956) 646; cf. Sommerich and Busch, 38 Cornell L.Rev. (1953) 125; U. S. ex rel. Jelic v. District Director of Immigration, 2 Cir., 106 F.2d 14, 20; U. S. ex rel. Zdunic v. Uhl, 2 Cir., 137 F.2d 858.

9. For a different possible justification, see Busch, loc. cit. at 649.
· An American court may go astray even in taking judicial notice of English "law."

The similarity in language may be deceptive by concealing significant differences. Indeed, just because the English language appears the same as the American language (although it is not), an American may understand the former less adequately than he understands German or French, which is more obviously "foreign" and different. See Anon Y. Mous, The Speech of Judges, 29 Va.L.Rev. (1943), 625, 628.
Moreover, the taken-for-granted, unexpressed, background assumptions of English judges and lawyers differ from the unspoken assumptions of American judges and lawyers, and thus may well induce serious misunderstandings. Holmes, J., noted the baffling character of such tacit assumptions in a foreign system like that of Puerto Rico; see Diaz v. Gonsolez, 261 U.S. 102, 105–106, 43 S.Ct. 286, 67 L.Ed. 550. Tacit English assumptions may be even more baffling to an American.

9a. For criticism of this narrow interpretation, see Nussbaum, Proving the Law of Foreign Countries, 3 Am.J. of Comp.Law (1954) 60–62; cf. Nussbaum, The Problem of Proving Foreign Law, 50 Yale L.J. (1941) 1018, 1023.

10. Greiner v. Freund, 286 App.Div. 996, 144 N.Y.S.2d 766; Arams v. Arams, 182 Misc. 328, 45 N.Y.S.2d 251; see also the articles cited in note 8, supra.

11. Sonnesen v. Panama Transport Co., 298 N.Y. 262, 82 N.E.2d 569; Berg v. Oriental Consol. Mining Co., Sup., 70 N.Y.S.2d 19.

judge, absent a contrary showing, should have presumed that those principles are recognized in Saudi Arabia; therefore the burden of showing the contrary was on the defendant, which did not discharge that burden.[12] But we do not agree that the applicable tort principles, necessary to establish plaintiff's claim, are "rudimentary": In countries where the common law does not prevail, our doctrines relative to negligence, and to a master's liability for his servant's acts, may well not exist or be vastly different. Consequently, here plaintiff had the burden of showing, to the trial court's satisfaction, Saudi Arabian "law."[13]

This conclusion seems unjust for this reason: Both the parties are Americans. The plaintiff was but a transient in Saudi Arabia when the accident occurred and has not been there since that time. The defendant company engages in extensive business operations there, and is therefore in a far better position to obtain information concerning the "law" of that country.[13a] But, under the New York decisions which we must follow, plaintiff had the burden. As he did not discharge it, a majority of the court holds that the judge correctly gave judgment for the defendant.

■ 4. In argument, plaintiff's counsel asserted that Saudi Arabia has "no law or legal system," and no courts open to plaintiff, but only a dictatorial monarch who decides according to his whim whether a claim like plaintiff's shall be redressed, i. e., that Saudi Arabia is, in effect, "uncivilized." According to Holmes, J.—in Slater v. Mexican National R. Co., 194 U.S. 120, 129, 24 S.Ct. 581, 584, 48 L.Ed. 900, in American Banana Co. v. United Fruit Co., 213 U.S. 347, 355–356, 29 S.Ct. 511, 53 L.Ed. 826, and in Cuba R. Co. v. Crosby, 222 U.S. 473, 478, 32 S. Ct. 132—the *lex loci* does not apply "where a tort is committed in an uncivilized country" or in one "having no law that civilized countries would recognize as adequate."[14] If such were the case here, we think the New York courts would apply (and therefore we should) the substantive "law" of the country which is most closely connected with the parties and their conduct—in this case, American "law."[14a] But plaintiff has offered no data showing that Saudi Arabia is thus "uncivilized." We are loath to and will not believe it, absent such a showing.

■ 5. The complaint in this action was filed on May 10, 1949. Pre-trial hearings were held before Judge Conger on December 2, 1952; January 7, 1953; March 31, 1953; and April 10, 1953. At these hearings the question of proving Saudi-Arabian law was discussed. When the case came on for trial on November 7, 1953 Judge Bicks indicated that in his

12. Cuba R. Co. v. Crosby, 222 U.S. 473, 478, 32 S.Ct. 132, 56 L.Ed. 274; Industrial Export & Import Corp. v. Hongkong & Shanghai Banking Corp., 302 N.Y. 342, 349–350, 98 N.E.2d 466; Ehag Eisenbahnwerte H.A. v. Banca Nat., 306 N. Y. 242, 249, 117 N.E.2d 346; Arams v. Arams, 182 Misc. 328, 45 N.Y.S.2d 251.

13. See Arams v. Arams, 182 Misc. 328, 45 N.Y.S.2d 251, and the other cases cited in the preceding footnote; see also Whitford v. Panama R. Co., 23 N.Y. 465; Crashley v. Press Pub. Co., 179 N.Y. 27, 32–33, 71 N.E. 258; E. Gerli & Co. v. Cunard SS Co., 2 Cir., 48 F.2d 115, 117; Ozanic v. U. S., 2 Cir., 165 F.2d 738, 744.

13a. See Nussbaum, 3 Am.J. of Comp.Law (1954) 60, 62; Nussbaum, 50 Yale L.J. (1941) 1018, 1043.

14. Cf. Dicey, Conflict of Laws (2d ed.) 726, cited in American Banana Co. v. United Fruit Co., 213 U.S. 347, 356, 29 S.Ct. 511, 53 L.Ed. 826. The latest or 6th edition of Dicey (1949) 805 repeats the statement.

14a. This is in line with the idea that the "proper law" is that of the place of paramount contacts, as to which see Cheatham, Goodrich, Griswold and Reese, Cases and Materials on Conflict of Law (3d ed., 1951) 420 et seq.; cf. 204, 239–240; Cavers, A Critique of The Choice of Law Problem, 47 Harv.L.Rev. (1933) 173, 191–193.

As the tort rules, pertinent here, of New York, Delaware and Arkansas are doubtless substantially similar, there would be no need to choose one or the other.

view the burden was on the plaintiff to prove the foreign "law". When the plaintiff's counsel said that he was not prepared to prove the "law" of Saudi-Arabia, Judge Bicks proposed that the case be adjourned long enough to allow the plaintiff to prepare such proof. It was agreed that the case be put over for two days to enable the plaintiff to decide whether to request an adjournment for that purpose.

When the hearing resumed on November 9, plaintiff's counsel unequivocally took the position that he did not wish to prove the foreign "law" and wanted no adjournment. He chose to rely on the applicability of New York "law". To that end he proposed that he proceed to present his case in order to make a record for appeal. The plaintiff's evidence as to liability was presented and on a proper motion the judge dismissed the complaint. He specifically ruled that he would not take judicial notice of the "law" of Saudi-Arabia and that the plaintiff's failure to prove that "law" required dismissal.

Since the plaintiff deliberately refrained from establishing an essential element of his case, the complaint was properly dismissed. The majority of the court thinks that, for the following reasons, it is inappropriate to remand the case so that the plaintiff may have another chance: He had abundant opportunity to supply the missing element and chose not to avail himself of it. It does not appear whether Judge Bicks or counsel for the parties considered the application of Section 344–a of the New York Civil Practice Act. Since Judge Bicks specifically determined that he would not take judicial notice of the Arabian "law", he must have considered that in some circumstances he might take judicial notice of foreign "law". But in any event, as we have pointed out, it would have been an abuse of discretion under the New York cases to take notice of the foreign "law" here. The judgment of dismissal must therefore be affirmed.

The writer of the opinion thinks we should remand for this reason: Apparently neither the trial judge nor the parties were aware of New York Civil Practice Act, § 344–a; consequently, in the interests of justice,[15] we should remand with directions to permit the parties, if they so desire, to present material which may assist the trial judge to ascertain the applicable "law" of Saudi-Arabia.[16]

Affirmed.

15. Estho v. Lear, 7 Pet. 130, 32 U.S. 130, 8 L.Ed. 632; Ford Motor Co. v. N. L. R. B., 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221; U. S. v. Rio Grande Dam & Irrigation Co., 184 U.S. 416, 423–424, 22 S.Ct. 428, 46 L.Ed. 619; Porter v. Leventhal, 2 Cir., 160 F.2d 52, 59 and cases there cited; Benz v. Celeste Fur Dyeing & Dressing Corp., 2 Cir., 136 F.2d 845; Nachman Spring-Filled Corp. v. Kay Mfg. Co., 2 Cir., 139 F.2d 781, 787.

See also Usatorre v. The Victoria, 2 Cir., 172 F.2d 434; Sonnesen v. Panama Transport Co., 298 N.Y. 262, 267, 82 N.E.2d 569; Sommerich, 4 Am.J. of Comp.Law (1955) 453.

16. Or that it has no "civilized" legal system; see point 4 of the text, supra.

Nussbaum, 3 Am.J. of Comp.Law (1954) 60, 63–64—criticising Usatorre v. The Victoria, 2 Cir., 172 F.2d 434 points to an important fact: the prohibitive expense to a party of modest financial means in obtaining an expert to explain foreign "law."

Subsequently (pp. 66–67), Nussbaum suggests that the trial judge call his own expert; the judge, says Nussbaum, would require the parties to advance the expert's fee, or, "if this is not feasible, the court (hence eventually the losing party), may be charged with the fee as part of the court's business." But, as matters now stand, this solution is not feasible: In a federal criminal case, a trial judge may call upon his own expert whom the government will pay; see Criminal Rule 28, 18 U.S.C.A. However, in a civil case (at any rate, one to which the government is not a party) the government has no authority to pay an expert; and the use of the device of taxing the expert's fee as part of the costs to the losing party may be beyond the judge's power (absent a statute); in any event, the expert will go unpaid if the losing party has not the funds to pay such costs.

In the instant case, a letter from Hon. Raymond T. Yingling, Assistant Legal Adviser of the U. S. Department of State, suggests to the writer that, with little or no expense, the parties probably could procure some information as to the pertinent legal rules of Saudi Arabia; perhaps, also, further information could be procured without expense from officials of The United Nations.