Breitel, J. (dissenting).
Plaintiff’s and defendant’s deceased daughters were fellow students in residence in pursuit of academic degrees in Michigan State University at Lansing, Michigan. They and a third fellow student, a resident of Michigan, traveled in a sports car automobile provided for the exclusive use of the defendant’s deceased daughter by her father in whose name the car was registered and insured. The trip originated in Lansing and was to end in Detroit, Michigan, but was abruptly terminated by the accident, fatal to defendant’s daughter, en route to Detroit. The trip was initiated entirely while the young women were in attendance at the school. The sports car had been newly acquired for the defendant’s deceased daughter for her use at school in Michigan and was garaged there. The father had driven it once or twice; he had another automobile for his and his wife’s use.
Except for the facts that plaintiff and the deceased were New York residents, that defendant’s deceased daughter had a New York operator’s license, that the registered owner of the car was a New York resident, and that the car was registered and insured in New York, every other facet of the accident was based in Michigan and was as localized as it could be in that *593 State. The students were in residence at the university, were not in sojourn for short courses or interim sessions, or on tour. The trip was intrinsically and exclusively a Michigan trip, concerned only with Michigan places, roads, and conditions.
The registration and ownership of the car and the residence of its driver, as well as that of plaintiff’s deceased daughter, were adventitious so far as this trip was concerned. The same trip with the same purposes with some automobile would have or could have taken place among a similar group of students from other States or Michigan, or by the same students, even if the States of residence and automobile ownership and insurance were changed. Indeed, defendant might have chosen to have the automobile registered and insured in either Michigan or New York, and in his daughter’s name, since the car, as a matter of family arrangements, was really hers rather than his.
In this highly mobile and automotive Nation the slight admixture of multi-state contacts as occurred here is now very frequent, and is becoming increasingly so. Unless conflicts rules move over to substitute a completely personal law for the territorial system that infuses Anglo-American jurisprudence and underlies the understanding and expectations of Americans, it is still true that the law of a territory governs the conduct and qualifiedly the status of persons, resident and nonresident, within it, except in the extraordinary situation where the localization of persons and conduct is adventitious. At least this has been true until quite recently. No doubt, in Miller v. Miller (22 N Y 2d 12), in a context sufficiently different from this case and involving a death action statute rather than a guest-host statute, and, therefore, not controlling here, the majority took a different view.
What the rules, exemplified by Babcock v. Jackson (12 N Y 2d 473; Macey v. Rozbicki (18 N Y 2d 289), and Farber v. Smolack (20 N Y 2d 198) established, and very rightly so, was that when the territory in which the accident occurs is wholly adventitious to the relationship or status among the parties, that factor should not determine the applicable law. In each of these cases the seat and purpose of the relationship was established to be elsewhere than where the accident occurred. It was the place of the accident that could be changed without changing or affecting the other relationships. In short, except in a rather minimal *594 way, the conduct of the parties was not affected by the place where the accident occurred. It was, therefore, adventitious.
The converse occurred in this case. The incidental .registration and ownership of the car, and the domicile of these Michigan students, did not influence their conduct or the establishment of nature of the relationship among them. Regardless of these facts they would undoubtedly have entered into the same .relationship, made the same trip, and behaved the same way.. These facts were, therefore, extrinsic or adventitious...
On this view, Dym v. Gordon (16 N Y 2d 120) was soundly decided, and this case, which is even stronger on its intrinsic facts because of the young women’s being students in residence, as that term is used in the academic world, should be decided the same way (Cavers, Choice-of-Law Process, pp. 300-304). In the Bym case, the parties were summer students at the University of Colorado, enrolled for a .six-week course, and it was out of that relationship that the Colorado automobile trip was initiated and was to be concluded. The New York residence of the parties and the New York registration and ownership of the car were adventitious. Change these adventitious facts and it is likely that the same trip with the same people in perhaps the same car would have taken place just the same.
On the foregoing analysis, the - Michigan guest-host statute should be applied. The latest Restatement draft would do as much (Restatement, 2d, Conflict of Laws, P. O. D., pt. II, § 159, esp. Comment b* [1] 2). What that means concretely is that when *595 plaintiff’s deceased daughter as a Michigan student in residence became a guest of a fellow student in her car (however registered or owned), or even in a borrowed or rented car, for a Michigan automobile trip, she formed the relationship and accepted the consequence of that relationship under Michigan law, just as much as she did, on a different issue, in determining the standard of care to be applied to the automobile operator’s conduct (compare Babcock v. Jackson, supra, p. 484, with Walton v. Arabian Amer. Oil Co., 233 F. 2d 541, cert. den. 352 U. S. 872; see, also, Ehrenzweig, Local and Moral Data in the Conflict of Laws: Terra Incognita, 16 Buffalo L. Rev. 55, 57-58). This is not only a simple rule easy to apply with a high degree of certainty but offends no sense of justice except perhaps of those who look either to personal law or have a conscious or unconscious predilection for law of the forum as reflecting a higher degree of justice.
Moreover, it is a rule much more consistent with the genius of Anglo-American jurisprudence, does less violence to precedent, and yet accords ample and ungrudging recognition to the greater flexibility provided in conflicts cases by the modern approaches than the lex loci delictus doctrine which had always been overstated and too mechanically applied (see Dike v. Erie Ry., 45 N. Y. 113, which long ago, on an attenuated contract theory, ignored the lex loci delictus because the site of the accident was adventitious).
The fact is that the law to be applied should not itself be the paramount influence in weighing the circumstances of a case in which a choice of law must be made; rather the choice of law should be the conclusion of a selective process which looks initially to the circumstances or factors. To be sure, in considering the significance of the factors or circumstances of a case one must be influenced by the purposes of the relevant rules of law, since there can be no naked selection of facts without purpose anymore than there can be an application of a whole jurisprudence to a complex of multi-state facts. It is in this sense that the process of isolating the issues together with the significant policies is relevant (e.g., Restatement, 2d, Conflict of Laws, P. O. D., pt. II [May 1.1968], § 145, incl. Comment b). This still does not mean that a preference for the policy of a relevant rule should in actual practice as so often happens, to *596 the exclusion of everything else, determine its selection (Ehrenzweig, Multistate Tort Law, 53 Ya. L. Rev. 847, 854; see, also, Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N. Y. U. L. Rev. 267, 295-304). Indeed, in looking to the purpose of a rule one must expect that the rule expresses parochial or selective governmental interests in one or another class of residents, transients, citizens, or aliens who happen to be in the community, but this is hardly a sufficient justification for its elevation on some theory of a “ super-law ” (Ehrenzweig, Private International Law, § 18; Traynor, Is This Conflict Really Necessary?, 37 Tex. L. Rev. 657, 667).
For that matter any monistic attempt to find some one great principle or doctrine to cover all conflicts problems in all fields of law has not been and is not likely to be successful. Certain it is that contacts theory or governmental interests theory, and their several variations all help to explain the several influences effective in reaching results, but no one of them is entitled to recognition as a universal touchstone, yesterday, today, or tomorrow (see, e.g., Leflar, Comments on Babcock v. Jackson, 63 Col. L. Rev. 1212, 1247, 1248-1249). The efforts of analysts like Currie, Cavers, Reese, Ehrénzweig, and the Restatement itself, as much as those of the now-disavowed Beale, seek or sought to articulate why the selection between significant and adventitious facts divides them as it does, and to create o.r discover a viable rationale. The problem has been exacerbated, of course, by the scholar’s, and sometimes the Judge’s understandable penchant to discover a single embracive principle to cover all cases.
There are truly difficult cases where the division between the significant and adventitious facts is elusive. This case is hardly such a one. The trouble with overextending the successive and changing rationales from Auten v. Auten (308 N. Y. 155) in the contract field, through the Babcock case (supra) and its progeny, is to introduce the very uncertainty and chaotic unpredictability that the extremist critics of any change from the lex loci rules predicted. It is not necessary to fulfill the worst of those predictions if one significant factor is recalled.
In modern theories in the field of conflicts, the analysts have generally posited, or in fact assumed, as a significant factor the place where the transaction occurred (Restatement, 2d, Conflict *597 of Laws, P. O. D., pt. II, supra, § 146, Comment d, and Reporter’s Note to Comment d). What has happened of course, is that lip service is paid to the factor of place, and promptly ignored thereafter, if the forum prefers its own policy preconceptions and especially if it requires denial of recovery to a plaintiff in a tort case. Of course, the contrary is likely to occur, where the new rules might otherwise displace the factor of locus, as in Kell v. Henderson (26 A D 2d 595), a case involving the exact converse of the facts in Babcock v. Jackson (supra) and the court applied New York law to Ontario residents to permit plaintiff to recover (see Rosenberg and Trautman, Two Views on Kell v. Henderson, 67 Col. L. Rev. 459,465).
Intra-mural speculation on the policies of other States has obvious limitations because of restricted information and wisdom. It is difficult enough to interpret .the statutes and decisional rules of one’s own State. To be sure, there is no total escape from considering the policies of other States. But this necessity should not be extended to produce anomalies of results out of the same accident, with unpredictability, and lack of consistency in determinations. Thus, it is hard to accept the implicit consequence that Miss Silk, the Michigan resident injured in the accident, should not be able to recover in Michigan (and presumably in New York) but a recovery can be had for her deceased fellow-passenger in the very same accident.
If the trend continues uninterruptedly, the shift to a personal law approach in conflicts law, especially in the torts field, will continue apace (see Cavers, Choice-of-Law Process, supra, pp. 150-156). Apart from the fact that such a development is not logically consistent with Anglo-American jurisprudence, it would create a sharp division between intra-national conflicts rules and extra-national conflicts rules. It is most unlikely that such a development would be .recognized elsewhere. Inevitably, the goals of uniformity, let alone predictability, in conflict rules would be frustrated, and the arbitrary results produced by forum-selection would be proliferated beyond tolerable limits.
For all of these reasons, I dissent and vote to affirm, and would deny the motion to dismiss the' affirmative defense.
Opinion by Judge Keating in which Chief Judge Fuld and Judges Burke and Bergan concurChief Judge Fuld and Judge *598 Burke also concur in separate opinions; Judge Breitel dissents and votes to affirm in a separate opinion in which Judges Soileppi and Jasen concur.
Order reversed, with costs, and case remitted to Special Term for further proceedings in accordance with the opinion herein.

. 159. Duty Owed 'Plaintiff.
(1) The law selected by application of the rule of § 145 determines whether the actor owed a duty to the injured person and whether this duty was violated.
(2) The applicable law will usually be the local law of the state where the injury occurred.
* # #
Comment. * * * b. Exceptions to normal liability. Sometimes the actor may claim that because of his relationship to another he is immune from all tort liability to the other or else will be liable to the other only for s'om'e aggravated form of conduct, as recklessness or gross negligence. So a husband may claim that he is immune from tort liability to his wife and the driver of an automobile may contend that he can only be held liable to a -guest passenger for intentional injuries or for some aggravated form of negligence. The local law of the state where the relationship is centered may be applied in such circumstances to determine whether the actor is excused from normal tort liability because of the relationship ”.